JOHN  H.  HEALD  *vs.*  WILLIAM  H.  HEALD,  and
others.

*Province of Courts in declaring the rights of parties—Ques-
tions of Construction arising under a Will—Perpetuities—
The words "Surviving Children," and "Children," con-
strued—Estate given to "issue" by implication—Survivor-
ship by implication—Supply of words by intendment—
Valid clauses in Will not defeated by those which are invalid.*

It is not the province of Courts to declare the rights of parties,
except in cases where immediate relief can be given.

If there is no matter in dispute, and the application is to do nothing
more than *to declare future rights*, in such cases Courts will not
entertain jurisdiction.

But where there is an application by a trustee under a will, directed
to make large investments upon certain trusts and limitations, in
regard to the validity of which, and the rights of the parties in
regard thereto, grave doubts have arisen, he is entitled to the aid
of this Court, to instruct him as to his duties, and to protect him
in the discharge of them now, and in the future emergencies of
the family of the testator.

No difference in the construction of several items of a will, in other
respects similar, can arise from the fact that some of those items
relate to real estate alone, while the other items include both
realty and personalty, where the latter items direct the conversion
of the shares therein mentioned into real estate, and devise those
shares in that form.

By the fourth item of his will, a testator devised his country place,
"Allendale," to a trustee in trust, 1st. For the testator's son,
Charles, *for life*, without power to Charles to dispose of his life
estate, or in any way to encumber the same. 2nd. From and after
the death of Charles, in trust for the use and benefit of his
children living at his death, in equal shares, for *their* lives, under
the same restrictions as to alienation and encumbering their
equitable shares. 3rd. On the death of any of the children of

Heald *vs.* Heald, *et al.*

Charles, who survived him, without issue living at the time of the death of said child, then in further trust for the survivors or survivor. 4th. On the death of any of the children of Charles, leaving issue living at his or her death, then to such children absolutely free of the trust. 5th. On the death of Charles without issue living at the time of his death, to the children of the testator then living, and to the issue of any children who might have died before Charles, *per stirpes*, and not *per capita*. On a bill filed by the trustee, for the construction of said will, it was HELD:

1st. That by said fourth item of the will, Charles took an *equitable life estate*.

2nd. That whether the provision restraining him from alienating or encumbering it was void, being inconsistent with the estate given him, and there being no limitation over in the event of his making any disposition of his life estate, was a question not then ripe for decision.

3rd. That the next limitation was that of an equitable estate for life to such of the children of Charles, as might be living at the time of his death, with survivorship among said children as to the shares of any of them who might die without leaving issue living.

4th. That the limitation over, upon the death of any of the children of Charles who might survive him leaving issue, to such issue absolutely, was void as violating the rule against perpetuities.

5th. That the invalidity of this last mentioned devise, however, did not affect the previous estates for life to Charles and his surviving children.

6th. That the words "surviving children," contained in the limitation over in the event of the death of Charles, without issue living at his death, to the surviving children of the testator, must mean children surviving at the death of Charles without issue living; and the limitation was valid.

7th. That the limitation over, upon the death of Charles' children, leaving issue, to such issue absolutely, being void, the equitable fee on the death of the testator descended as in a case of intestacy to his heirs-at-law, who were such at his death, subject to the successive estates for life to Charles and his children, and subject to be divested in the event of the death of Charles without issue surviving him.

8th. That on the death of any child of Charles, leaving issue surviving, the share of such child did not survive to the remaining brothers and sisters, nor did it go to the issue of such child, but would vest at once in the persons and their heirs, who were heirs-at-law of the testator at the time of his death. And in that capacity, and in that right, the issue of such deceased child of Charles would take an interest in the fee of the share held by its deceased parent for life.

9th. That the word " children," as used in the limitation of estates for life to the children of Charles on his dying leaving children, did not mean issue, but children, in the literal sense of the word.

10th. That if Charles should die, leaving no children, but leaving issue of deceased children, such issue would take *absolutely* by implication, the share devised to him.

The said testator directed another share of his estate to be invested in ground rents, and held by a trustee in trust, 1st. For the use of William, Charles, and John, children of the testator's son, Edward, in equal parts, for their lives, with survivorship among them on the death of any of them without issue living. 2nd. On the death of any of said grand-children, leaving issue at his death, in trust for such issue for their natural lives. 3rd. After the death of the children of such deceased grand-children, then to the testator's right heirs absolutely. 4th. Upon the death of all his said grand-children without issue living, then said ground rents were to be sold, and the proceeds distributed among all the testator's children, and the issue of deceased children. HELD :

1st. That said William, Charles, and John, took equitable estates for life, with survivorship among the life tenants on the death of any of them without issue, living at his death.

2nd. That the children of any of said life tenants who survived the parent, took an equitable estate for life in the share of such parent, in equal parts.

3rd. That the devise over to the right heirs of the testator on the death of the children of William, Charles, and John, was void, being against the rule forbidding perpetuities; and the equitable fee descended, as in case of intestacy, to the heirs of the testator, at the time of his death, subject to be divested by the death of all the grand-children of the testator without issue living, in which event the share was devised to the children of the testator, and the issue of his deceased children.

Heald *vs.* Heald, *et al.*

4th. That although the will did not in terms create survivorship among the children of William, Charles, and John, such survivorship arose by implication, because the devise over to the testator's right heirs was not to take effect until the death of said children of said deceased grand-children, which would seem to postpone the vesting of the estate attempted to be devised to the heirs-at-law, until the death of all the children of his grand-children.

The share devised by the testator to the children of his daughter, Adeline, he directed should also be invested in ground rents in the name of a trustee upon the following trusts: 1st. For the use of Mary, Josephine, William, and Eleanor, children of the said Adeline, in equal shares for their lives, with survivorship among them on the death of any of them without issue living. 2nd. To the children of any of said children, for their lives. 3rd. Upon the death of the children, of such children of said Adeline, to the testator's right heirs, share and share alike absolutely. HELD:

1st. That the children of Adeline took an equitable life estate, with survivorship on the death of any of them without issue.

2nd. That their children took equitable estates for life in the shares of their parents.

3rd. That the devise over to the testator's heirs after the death of the children of each of the named grand-children was void, and the equitable fee descended on the death of the testator to those who were then his right heirs, subject to the successive equitable estates for life.

4th. That survivorship by implication would seem to exist among the children of each of said Mary, Josephine, William and Eleanor, because the attempted devise over to the testator's heirs was made to take effect from and after the death of "said children of said deceased child."

Where it is plain that the testator has not expressed himself as he intended and supposed he had done, and the defect arose from the omission of some word or words, and where it is certain what particular words were thus omitted, they may be supplied by intendment.

But no words can be supplied so long as there is any fair ground to question what particular words were intended to have been used.

Where a testator has attempted to limit over property beyond the time allowed by law, the failure to take effect, of the estate thus attempted to be devised, is no reason why the Court should supply

words never intended to be used by the testator, and thereby give to the first tenant an estate which the testator did not mean he should take.

The devises in a will that are valid, are not required to be set aside because certain limitations over fail to take effect.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court. The bill was filed by the appellant against the appellees, and a *pro forma* decree dismissing the bill and reserving to the complainant the right to appeal, was passed by consent of parties by the Court below, (DOBBIN, J.) The complainant appealed.

The cause was argued before BOWIE, MILLER, ROBINSON, and IRVING, J.

*William A. Fisher*, and *Charles Marshall*, for the appellant.

*Orlando F. Bump*, and *Sebastian Brown*, for the appellees.

ROBINSON, J., delivered the opinion of the Court.

The bill in this case is filed to obtain a construction of the will of William Heald.

The testator left three sons, William H., John H., and Howard Heald, all of whom were of full age at the time of his death.

He left also two infant children, Charles M. and Alice H. Heald.

Before his death, two children, namely, Edward Heald and Adeline E. Spurrier had died, each leaving infant children, living at the time of the testator's death.

He divided his estate into seven parts, three of which were devised absolutely to his three sons, William H., John H. and Howard Heald.

By the fourth item, the testator devises his country place "Allendale" to his son John H. Heald, the complainant, in fee, in trust ;—

1st. For the testator's son Charles Mercer Heald *for life,* without power to Charles to dispose of his life estate, or in any way to encumber the same.

2nd. From and after the death of Charles, in trust for the use and benefit of his children living at his death, in equal shares for *their* lives, under the same restrictions as to alienation and encumbering their equitable shares.

3rd. On the death of any of the children of Charles, who survive him, without issue living at the time of the death of such child, then in further trust for the survivors or survivor.

4th. On the death of any of the children of Charles, leaving issue living at his or her death, then to such issue absolutely free of the trust.

5th. On the death of Charles without issue living at the time of his death, to the children of the testator then living and to the issue of any children who may have died before Charles, *per stirpes* and not *per capita.*

By the fifth item, a like devise is made in trust for Alice Howard Heald, daughter of the testator, and her children, of certain other real estate mentioned in said item.

The testator directs that in dividing his property into seven shares, "Allendale" devised to Charles, shall be valued at $18,000, and the real estate devised to Alice at $12,000 ; and that they be charged with these valuations as parts of their respective shares of his estate.

He then directs that from one of said one-seventh parts the sum of $15,000 be deducted, and the residue of said one-seventh be given to the children of his daughter Adeline Spurrier, subject to certain provisions hereafter mentioned.

He then directs that the remaining six-sevenths of his estate be divided into six parts ; and that one-sixth of the

same, after deducting $18,000, the value of "Allendale," be invested by his executors in permanent ground rents in the name of the complainant, John H. Heald, in trust for Charles Mercer Heald and his children, and subject to the same limitations set forth in the fourth item in regard to the devise of "Allendale."

A like provision is made for Alice and her children as to another sixth of said estate, after deducting therefrom $12,000, the valuation of the real estate devised to her.

The testator also directs, that one of the six parts of his estate, shall be invested by his executors in permanent ground rents, in the name of John H. Heald, upon the following trusts:—

First. For the use of William, Charles, and John Creswell Heald, children of the testator's son, Edward Heald, in equal parts for their lives, with survivorship among them, on the death of any of them without issue living.

Second. On the death of any of said grand-children leaving issue at his death, in trust for such issue for their natural lives.

Third. After the death of the children of such deceased grand-children, then to the testator's right heirs absolutely.

Fourth. Upon the death of all his said grand-children without issue living, then said ground rents are to be sold, and the proceeds distributed among all of the testator's children, and the issue of deceased children.

The share devised to the children of his daughter Adeline Spurrier, he directs shall also be invested in ground rents, in the name of John H. Heald, and upon the following trusts:—

First. For the use of Mary, Josephine, William and Eleanor Spurrier, children of the said Adeline, in equal shares for their lives, with survivorship among them, on the death of any of them without issue living.

Second. To the children of any of said children for their lives.

Third. Upon the death of the children of such children of Adeline, to the testator's right heirs, share and share alike absolutely.

The bill charges, that the shares thus devised to the above named parties, have been invested in permanent ground rents, upon the trusts and limitations mentioned in the will of the testator, except a small balance now remaining in the hands of the complainant, and which is insufficient to purchase a ground rent according to the directions of said will.

The bill further charges, that doubts have arisen as to the validity of certain trusts upon which said investments have been made, and as to the rights of the several parties in such investments, and that the complainant cannot safely proceed to execute the trusts of said will, without a judicial construction thereof, and an ascertainment of the rights of the several persons and classes of persons concerned.

It is not the province of Courts to declare the rights of parties, except in cases where immediate relief can be given. If there is no matter in dispute, and the application is to do nothing more, than *to declare future rights*, in such a case Courts will not entertain jurisdiction.

But this is an application by a trustee, under a will, directed to make large investments upon certain trusts and limitations, in regard to the validity of which, and the rights of the parties in regard thereto, grave doubts have arisen. Under such circumstances, we are of opinion that he is entitled to the aid of this Court, to instruct him as to his duties, and to protect him in the discharge of them, now, and in the future emergencies of the family of the testator.

The provisions of the fourth, fifth, seventh, eighth and ninth items of the will, with reference to Charles Mercer and Alice Howard, are substantially the same, and we shall consider the construction of those items in the first

instance, taking the fourth item as an example of the others.

No difference in the construction of these items can arise from the fact, that items four and five relate to real estate alone, while items seven, eight and nine, may include both realty and personalty. These latter items direct the conversion of the shares therein mentioned into real estate, and devise those shares in that form.

By the *fourth* item of the will, it is plain, that Charles. Mercer Heald, takes *an equitable life estate.* Whether the provision restraining him from alienating or encumbering it, is void, being inconsistent with the estate given him, and there being no limitation over in the event of his making any disposition of his life estate, is a question, not now ripe for decision, and we are not to be understood as expressing any opinion in regard thereto.

It is equally plain, we think, that the next limitation is that of an equitable estate for life, to such of the children of Charles, as may be living at the time of his death, with survivorship among said children as to the shares of any of them, who may die without leaving issue living. The life estate thus given to the children of Charles, who survive him, must take effect immediately on his death, or within the period allowed by law thereafter.—that is,. it must take effect immediately upon the termination of a life, in being at the time of the death of the testator. It is well settled, that a devise for life, to the unborn children of a person who is living at the death of the testator, is valid. *Stuart vs. Cockerill*, 7 *L. R. Eq.*, 366; *Alvene vs. Lloyd*, 5 *L. R. Eq.*, 383; *Smith's Ed. of Fearn on Cont. Rem.*, *vol.* 1, *page* 502 *marg.*; *vol.* 2, *sec.* 536a.

If a limitation be good within the rule against perpetuities, it matters not whether the estate given be a fee or absolute property, or any less or partial interest, as for life or otherwise. *Lewis on Perpetuities*, 52 *Law Lib.*,. 172 *marg.*; 1 *Jarman on Wills*, 261 *marg.*

A limitation by will to the grand-children of the testa-tor, whether such children be the issue of children of the testator *in esse*, at the date of the will, or born after the date of the will, is valid, provided the fee be made to vest in the grand-children at or before they attain the age of twenty-one years, because all the children of the testa-tor must necessarily be born in his life-time or directly afterwards, and inasmuch as all their children must like-wise be born during their lives, or soon after their death, all the grand-children must in the nature of things be born during lives in being. *Lewis on Perpetuities, marg.* 460–1; *Smith vs. Farr,* 3 *Y. & C.,* 328; 1 *Jarman on Wills,* 340.

In *Deford's Case,* 36 *Md.,* 168, the trust was created for the maintenance and education of the grand-daughters born and to be born, and for the support and maintenance of the issue of any of the grand-daughters, who might die leaving issue before the time fixed for final distribution of the estate, and that time was fixed at the date when there should be no more than three grand-daughters alive. Such a trust it is plain, may continue as to some of the objects of it, namely, the issue of such grand-daughters as die before the time of distribution, beyond a life or lives in being at the time of its commencement, and twenty-one years and a fraction of a year thereafter. The trust was therefore held to be void, because it extended beyond the time allowed by the rule against perpetuities.

We have then an equitable life estate in Charles, and an equitable life estate in the children who survive him, and we come now to the limitation over upon the death of any such children leaving issue, to such issue absolutely. This last mentioned limitation clearly violates the rule against perpetuities, because it is an estate that may take effect after the death of persons not only not in being at the death of the testator, but who may not come into being for an indefinite period thereafter. The invalidity

of the last mentioned devise, however, does not affect the previous estates for life to Charles and his surviving children. *Goldsborough vs. Martin*, 41 *Md.*, 488; *Deford vs. Deford*, 36 *Md.*, 168.

The will further provides, that upon the death of Charles Mercer Heald, without issue living at his death, his share is to be divided among the surviving children of the testator in equal parts, the issue of any deceased child, to take the share to which the parent of such child if then living would be entitled. The words surviving children here, must mean children surviving at the death of Charles without issue living, and the limitation is valid as it must take effect if at all, on the expiration of a life in being at the death of the testator, or within a lawful period after the expiration of said life.

Charles Mercer Heald and his children it thus appears, take equitable estates for life, and the remainder over, upon the death of Charles' children, leaving issue, to such issue absolutely, being void, the equitable fee on the death of the testator, descends as in a case of intestacy to his heirs-at-law, who were such at his death, subject to the successive estates for life to Charles and his children, and subject to be divested in the event of the death of Charles without issue surviving him, in which case, the equitable fee as we have seen would not pass to the testator's heirs-at-law at his death, but to such of his children who survive Charles, and to the then surviving issue of any deceased children of the testator.

It then remains to be determined when the estate of the heirs-at-law of the testator will vest beneficially in them. The limitation over on the death of the children of Charles leaving issue, to such issue, is, as we have said, void. The share of the parent of that issue will not pass to the surviving brothers and sisters of that parent, because by the terms of the will survivorship among such life tenants, that is to say, among the children of Charles, is to occur only on

the death of any of them without issue. It follows, therefore, that when one of the children of Charles dies leaving issue surviving, the share of such child does not survive to the remaining brothers or sisters, nor does it go to the issue of such child; but vests at once in the persons and their heirs who were heirs-at-law of the testator at the time of his death. And in that capacity, and in that right the issue of such deceased child of Charles, would take an interest in the fee of the share held by its deceased parent for life.

There is another question arising under the devises to Charles Mercer and Alice. Should Charles Mercer die leaving children they take estates for life as we have before shown. It is plain that the word *children* as thus used, does not mean issue, but children in the literal sense of the word. To construe it as meaning issue would give a life estate to the issue of the children of Charles, who may die in his life-time, when it is plain that the testator meant after the death of the children of Charles, that the estate should become absolute in their issue.

Assuming then that the word children as thus used does not mean issue, we come to the provision that directs, in the event of the death of Charles without issue living at his death, the estate shall go to the testator's surviving children. Now suppose Charles should die leaving no children, but leaving issue of deceased children; in that event the devise to the testator's surviving children does not take effect, nor is there any specific direction as to what estate such surviving issue shall take. Unless such issue take the estate by implication, the testator must be held to have died intestate as to this part. But it is plain he did not intend to die intestate so long as there remained any issue of Charles who survived, and we are of opinion, therefore, that in the event of the death of Charles leaving issue, other than children surviving him, *such issue* would take the share *absolutely*.

In regard to item six, we are of opinion :

1st. That William, Charles and John Creswell Heald, take equitable estates for life, with survivorship among the life tenants on the death of any of them without issue living at his death.

2nd. The children of any of said life tenants who survive the parent, take an equitable estate for life in the share of such parent in equal parts.

3rd. The devise over to the right heirs of the testator, on the death of the children of William, Charles, and John Creswell Heald is void, being against the rule forbidding perpetuities ; and the equitable fee descends as in case of intestacy to the heirs of the testator at the time of his death, subject to be divested by the death of all the grand-children of the testator, without issue living, in which event the share is devised to the children of the testator and the issue of his deceased children. And although the will does not in terms create survivorship among the children of William, Charles and John C. Heald, we are of opinion that such survivorship arises by implication, because the devise over to the testator's right heirs, is not to take effect until the death of said children of said deceased grand-children, which would seem to postpone the vesting of the estate, attempted to be devised to the heirs-at-law, until the death of all the children of his grand-children.

In regard to the devise to the Spurrier children, we are of opinion :—

1st. That they take an equitable life estate with survivorship on the death of any of them without issue.

2nd. That their children take equitable estates for life, in the shares of their parents.

3rd. That the devise over to the testator's heirs after the death of the children of each of the named grand-children is void, and the equitable fee descended on the death of the testator, to those who were then his right heirs, subject to the successive equitable estates for life.

Survivorship by implication would seem to exist among the children of each of the Spurrier children, because the attempted devise over to the testator's heirs is made to take effect from and after the death of "said children of said deceased child."

It was urged in argument that in the limitation over after the death of the said children of such deceased child, then to my right heirs, the words "*through such child*" may be supplied by interpretation after the words "*my right heirs*," thereby creating a fee-tail in the first life tenant.

Where it is plain that the testator has not expressed himself as he intended and supposed he had done, and the defect arises from the omission of some word or words, and where it is certain what particular words were thus omitted, they may be supplied by intendment.

But no words can be supplied, so long as there is any fair ground to question what particular words were intended to have been used. Whatever may be the general intent of the testator, if it does not appear that he has omitted words intended to be used, it is not competent for the Court, by intendment, to reconstruct the will to give effect to such intention. *Martineau vs. Briggs,* 23 *Week. Rep.,* 889 ; *Brotherton vs. Bury,* 18 *Beav.,* 65.

There is nothing however upon the face of this will, to show that the testator has omitted the use of any word that he intended to use. He has attempted to limit over property beyond the time allowed by law. Because the estate thus attempted to be devised fails to take effect, is no reason why this Court should supply words never intended to be used by the testator, and thereby give to the first tenant an estate which the testator did not mean he should take. We cannot make a will for the testator.

Nor can we agree with the learned counsel for the appellees, that the several devises in the will that are valid must be set aside, because certain limitations over

fail to take effect. "A will may be good in part and bad in part. Distinct independent provisions which are in themselves free from objection, will not be invalidated by other separate provisions which are contrary to law." *Hanley vs. Jarvis*, 16 *Wend.*, 144.

For these reasons the *pro forma* decree will be reversed, and the cause remanded, in order that a decree may be passed in conformity with the opinion of this Court.

*Decree reversed, and*
*cause remanded.*

(Decided 28th June, 1881.)