## Public Defence Ass'n et al. v. Allegheny County et al.

*Courts — Declaratory judgments—Corporations—Party plaintiff—Anticipatory orders—Constitutional law—Act of June 18, 1923.*

1. A corporation is not a proper party plaintiff in an equity proceeding under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, to demand of the court a "declaration" concerning the constitutionality of an act of assembly that does not in the remotest degree affect any of its corporate powers.

2. Anticipatory restraining orders are permissible only when the exigencies of the case demand immediate action.

3. It is not the province of the court to answer questions of law until they arise in a justiciable cause in due course.

4. Eligibility to a public office cannot be determined judicially in a collateral proceeding and in advance of any claim or declared intention to assert a claim to the office.

5. *Quære.* Whether the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, is constitutional°

Demurrer. C. P. Allegheny Co., April T., 1924, No. 716.

*A. E. Anderson,* for plaintiff; *John S. Weller,* for J. P. Moore, Controller. *Richard W. Martin,* for defendant.

CARPENTER, J.—Complainant, challenging the constitutionality of certain acts of assembly of the session of 1923, avers need of equitable relief, spe-

Public Defence Ass'n et al. v. Allegheny County et al.

cifically, "declaratory relief," under and pursuant to the provisions of Act No. 321, enacted the same session. The Act was approved June 18, 1923, P. L. 840, and is entitled "An act concerning declaratory judgments and decrees and to make uniform the law relating thereto."

The acts attacked as unconstitutional are: No. 9, P. L. 11, "providing the method in which amendatory legislation shall be printed in the session's laws and for the interpretation thereof," and No. 86, P. L. 112, amending section 1, article I, of the Act of March 7, 1901, P. L. 20, entitled "An act for the government of cities of the second class."

The city demurs to the bill and for cause of demurrer says:

"1. No ground for equitable relief is set forth in the bill.

"2. The bill is vague, indefinite and uncertain.

"3. The bill does not aver any matter or thing in which plaintiff's rights are infringed.

"4. The plaintiff does not aver that the defendants are attempting to take any action under or by virtue of either the Act of May 1, 1923, P. L. 112, or the Act of March 16, 1923, P. L. 11.

"5. The plaintiff does not aver that its rights, status or other legal relations are affected by either of said acts of assembly which it asks the court to declare unconstitutional.

"6. The Uniform Declaratory Judgments Act, approved June 18, 1923, P. L. 480, does not give the court jurisdiction of the bill of complaint in this case.

"7. The bill is multifarious, in that it prays to have declared unconstitutional the two acts of assembly first mentioned, which are separate, independent and distinct."

The sixth cause assigned challenges the jurisdiction of the court. It does not question the constitutionality of the act under which plaintiff seeks relief, but raises the question: Do the facts recited in the bill exhibit a cause cognizable in equity? The answer to this question involves consideration of two others, to wit: The legal status of complainant and the adequacy of the facts recited to sustain the proceeding. Back of these questions is the question of constitutionality of the act. This question was not discussed, but an examination of several decisions of the Supreme Courts of other states involving declaratory judgment legislation led to the conclusion that it would not be out of place to direct attention to it. Without assuming to make any declaration, either affirmative or negative, respecting the matter, we call attention to the opinions of the Supreme Courts of Michigan and Kansas, the former declaring unconstitutional an act authorizing the courts of record of that state "to make binding declarations of rights," and the latter holding "an act relating to declaratory judgments" constitutional. The constitutionality of our act is quite likely to arise, and for this reason we quote at some length from these cases.

It will be admitted that the first requisite to the validity and effectiveness of any legal judgment or decree is power in the court to enforce it as such. Prior to the approval of the act (321), "declaratory judgments and decrees," as such, were unknown in the administration of law and equity in this State.

The Legislature of Michigan, at its session of 1919, enacted a Declaratory Judgments Act which, as above stated, came before the Supreme Court in Anway v. Grand Rapids Ry. Co., and is reported with extended annotations in 12 A. L. R. 26. We quote the syllabus:

"A statute authorizing courts to make binding declarations of rights when no judicial controversy is involved confers upon the courts powers not judi-

cial, and requires the performance of acts non-judicial in character, and is in conflict with constitutional provisions vesting judicial power in the courts."

Anway was a street-car conductor. He set forth in his bill that he desired to work more than six consecutive days in seven, and asked the court to "declare" whether the railway company would violate the provisions of Act 150, Public Acts of 1919, if it permitted him to do so. He did not plead a contract or any breach. The facts presented in the bill were admitted by the answer. Mr. Justice Fellows, who wrote the opinion of the Supreme Court, stated the question involved as follows: "Does that act (No. 361, Public Acts, 1919) make it unlawful for a street railway to allow its motormen or conductors, or both, to work more than six days in any consecutive seven days of twenty-four hours each, if the conductors or motormen so desire."

After calling attention to the absence of any averment in the bill that the rights of the parties had been invaded or that any damages were claimed or threatened, the learned justice says: "The proceedings must rest, and rest alone, upon Act 150, Public Acts of 1919."

And adds: "The learned author of this act says of it (54 Am. Law Rev. 161) : 'Now, for the first time, American legislation has definitely committed itself to the principle that an adequate system of remedial law requires courts to offer remedies in advance of the happening, or even of the threat, of any wrongful act and to authoritatively advise parties as to what their legal rights may be in the circumstances in which they find themselves.'

". . . A declaration of rights may be had where there is a present possibility of immediately creating a cause of action, as by a demand or refusal, but the parties have not done so, perhaps through reluctance to precipitate a conflict. This is the typical case for a friendly application to the court."

Attention is then directed by Judge Fellows to an article by the author of the act (54 Am. Law Rev. 161), under the title "The courts as authorized legal advisers of the people," and he comments as follows: "It at once becomes apparent that by the act the courts of this state are made the legal advisers of all seeking such advice, not through their existing opinions in matters which have involved wrongs committed and redressed by such tribunals, but in advance of an infringement of their rights, any breaches of their contracts, and that in advance of any existing controversy they be advised by a declaration of rights as to what the law is, or will be, in the event of future breaches, future contingencies, which may or may not happen. Indeed, this is the essence of the measure. Before this court, with its membership of eight, takes up the work of advising 3,000,000 people, and before the legislature is called upon to increase the membership of this court so as to efficiently conduct this work, it is well that we pause long enough to consider, and consider fully, whether the act calls us to perform any duties prescribed by the Constitution or to exercise any power therein conferred."

After stating and discussing various questions, directly or indirectly, involved and citing numerous cases, he quotes from Heald *v.* Heald, 56 Md. 300, in which the court says: "A court of equity will not take jurisdiction unless it can afford immediate relief, and certainly will not undertake, where there is no matter in dispute, to declare future rights."

And from Woods *v.* Fuller, 61 Md. 457, as follows: "It will never undertake to decide upon and determine a contingency that may never arise, unless such determination is necessary for the decision of some immediate relief to be granted, and which the court can enforce by decree."

Turning now to the Kansas case, State of Kansas ex rel. Hopkins, Attorney-General, v. Grove, 19 A. L. R. 1116, we quote the syllabus:

"A statute authorizing the rendition of a merely declaratory judgment is not unconstitutional on the ground of attempting to confer non-judicial power upon courts. Such judgments may be judicial acts, although rendered in actions admittedly brought before a right has been invaded and although no consequential relief is given or sought."

This proceeding was a *quo warranto* to determine the legal capacity of Grove to hold the office of city commissioner, to which he had been elected. Judgment was entered declaring defendant disqualified. The defendant was in the employ of the Missouri Pacific Railroad Company, and it was claimed he was disqualified because of a statute forbidding an employee of a railway company operating under a franchise granted by the city to hold any city office. The defendant not having attempted to enter upon the discharge of the duties of his office, the proceeding against him was brought under the provision of chapter 168, Laws of 1921. The constitutionality of the act was challenged. The opinion of the court was written by Mr. Justice Mason, who, after stating the facts briefly, takes up the case of Anway v. Grand Rapids Ry. Co., saying: "The proceeding in which the decision was rendered was not based on an actual controversy. . . . A majority of the justices treated the proceeding as one of the kind the legislature intended to authorize, but held the statute invalid because the power to make a declaration of rights where no consequential relief can be had is not judicial and cannot be conferred upon courts."

He then calls attention to section 1 of the Kansas Statute, which, in part, reads: "In cases of actual controversy, courts of record, within the scope of their respective jurisdictions, shall have power to make binding adjudication of rights, whether or not consequential relief is or at the time could be claimed, and no action or proceeding shall be open to objection on the ground that a judgment or order merely of right is prayed for," and directs attention to the fact that in the case of Muskrat v. United States, 219 U. S. 346, relied upon by the Supreme Court of Michigan, no actual controversy existed between the opposing parties, and says: "The decision, so far as it is based upon that ground, is not inconsistent with the validity of the act here involved. In the majority opinion in that case, however, views were expressed that, if accepted as sound, would be fatal to the Kansas statute."

Having called attention to the difference between the statutes in this respect, he adds: "Against the validity of the statute it is urged that the occasion for judicial action cannot arise until a claim is made that an actual wrong has been done or is immediately threatened, and, moreover (which is much the same thing stated in another way), that a decision cannot properly be classed as a judgment as a strictly judicial act, unless, besides determining the merits of the controversy between the parties, deciding which is right, it affords (or denies) some additional remedy—in other words, consequential relief—and, therefore, that power to decide a controversy in the absence of the conditions indicated is not judicial and cannot be conferred upon courts by the legislature."

This view he condemns as unsound and gives his reasons at length, citing and quoting numerous authorities.

The opinions from which we have quoted at what may seem unnecessary length contain elaborate discussions of the question of judicial and non-judicial functions.

Our Constitution declares, article I, section 11: "All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

The courts are open for the redress of injury, and this includes wrongs done or threatened. But whether it includes "declarations of rights, status and other legal relations" must ultimately be determined by the Supreme Court, and, as long since declared, it may do so *sua sponte* where the question of jurisdiction is fundamental.

In the present proceeding two acts of assembly are alleged to be unconstitutional. The first, No. 9, 1923, P. L. 11, provides the method in which amendatory legislation shall be printed in the session laws and for. their interpretation, and the second, No. 86, 1923, P. L. 112, amending section 1, article I, of the Act of March 7, 1901, P. L. 20, relating, *inter alia*, to the election of mayors in cities of the second class. These acts are unrelated. Whether, under the comprehensive provisions of the "Uniform Declaratory Judgments Act," they may be attacked in one proceeding, we do not express any opinion, but merely suggest that if two, then three or any number may be.

The act (321) exhibits a studied avoidance of any suggestion respecting procedure, but the purpose of the act and how the courts shall interpret it are set forth in section 15, which reads: "This act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it, and to harmonize, as far as possible, with Federal laws and regulations on the subject of declaratory judgments and decrees."

Recurring to the question of jurisdiction raised by the demurrer, we will consider first the right of complainant, a corporation, to institute this proceeding. The act uses the word "person," but says that, where used, it shall be construed to include corporations. Section 2 says: "Any person . . . whose rights, status or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the statute."

Granting that a corporation is, for many purposes, a person, what right of this complainant is affected? It is an artificial person, without personality, a citizen of the State without voice in matters affecting its policy. What standing can it have to demand of the court a "declaration" concerning the constitutionality of an act of assembly that does not in the remotest degree affect any of its corporate powers?

Anticipatory restraining orders are permissible only.when the exigencies of the case demand immediate action. And in such circumstances specific facts must be pleaded showing immediate danger to the complainant in his person, property or rights not compensable in damages. Eligibility to a public office cannot be determined judicially in a collateral proceeding and in advance of any claim or declared intention to assert a claim to the office. It is not the province of the court to answer questions of law until they arise in a justiciable cause in due course. Even if the acts of assembly here attacked should be adjudged unconstitutional, the real or supposed intention of the mayor of a city of the second class to become a candidate to succeed himself cannot be judicially anticipated and an effective "declaratory judgment or decree" entered in this proceeding.

In our opinion, the bill is clearly demurrable and must be dismissed.

And now, April 2, 1924, demurrer sustained and bill dismissed, with costs to defendants.

From Edwin L. Mattern, Pittsburgh, Pa.