## THOMAS H. ROBINSON, Trustee, vs. ELIZABETH F. MITCHELL.

*Devise of Vested Remainders After a Life Estate to a Class Including the Life Tenant.*

When there is a devise for life to one of the testator's children followed by a limitation in remainder to all of the testator's children, the general rule is that the tenant for life takes a vested remainder in the property together with the other children of the testator.

A testarix, who left surviving her six children, devised to her son James, for his natural life, the Homestead farm. By other clauses of her will she bequeathed the residue of her personal property to her six children equally, naming all of them, and also directed the residue of the real estate to be sold and the proceeds divided equally "amongst my said six children." The will then provided that after the death of James, the said Homestead farm "shall be equally divided amongst my said six children." James died leaving a will by which he gave his interest in the farm to his sister. *Held*, that there is nothing in the will to show that the devise of the remainder in the farm to the six children

of the testatrix was a mistake and that she intended to give the remainder to her five other children because she knew that James would be dead when the time for the distribution of the farm arrived; that the will does not evince an intention on the part of the testatrix to make an exactly equal division of her property among all her children, and that therefore, James took a vested remainder in one-sixth of the Homestead farm which passed under his will.

Appeal from an order of the Circuit Court for Harford County (FOWLER, C. J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Stevenson A. Williams* and *Fred. R. Williams* (with whom was *Thomas H. Robinson* on the brief), for the appellant.

1. The intention of the testator is to be gathered from the whole context of the will, and every word and expression used by her harmonized, if possible. *Douglas* v. *Blackford*, 7 Md. 8. Now, it must be clear from the face of her will and from the surrounding circumstances given in evidence, that the idea of *equality among all her children commensurate with the physical condition of her son James, as shown by the evidence*, is the fundamental principle of the entire scheme of Mary E. Farnandis' will. In four sentences prior to the devise of the remainder in fee in the Homestead, she devises her property "equally among her six children." If then, her intention appears to be to divide her property equally among her six children, that construction must be given to all her words which will fairly and reasonably carry into effect such intention of equality.

2. "Though it is the will itself which constitutes the real and only subject to be expounded, yet in performing this office a Court of construction is not bound to shut its eyes to the state of facts under which the will was made; on the contrary, an investigation of such facts often materially aids in elucidating the *scheme of disposition* which occupied the mind of the testator. To this end it is essential that the judicial expositor should place himself as fully as possible in the sit-

uation of the person whose language he has to interpret, and guided by the light thus thrown on the testamentary scheme, he may find himself justified in departing from a strict construction of the testator's language, without allowing 'conjectural interpretation to usurp the place of judicial exposition.'" 1 *Jarman Wills*, 733; *Snyder* v. *Warkasse*, 3 Stock (N. J.), 466.

"When the Court has possession of all the facts which it is entitled to know, they will only enable the Court to put a construction on the instrument consistent with the words, and the Judge is not at liberty, because be has acquired a knowledge of the facts, to put a construction on the words which they do not properly bear." *Sugden, Ch. in Atty.-Gen.* v. *Drummond*, 1 D. & War. 367. That is to say, parol evidence af all the circumstances surrounding the testator is admissible. *Taylor* v. *Watson*, 35 Md. 519. *Wigram's 5th Proposition.*

It is therefore submitted that the following circumstances will throw light on the proper construction to be put upon the words of her will:

(*a*) Mary E. Farnandis died seized of real and leasehold property in Maryland (as shown by the appellant's reports of sale in the partition cause, of which this appeal is a part), which has been sold for $165,375, and of this sum the Homestead was sold for $25,000, that is to say, for a sum greater than one-sixth of the whole.

(*b*) James Farnandis was in possession of the Homestead for 12 years from his mother's death, until his own death, and received the rents and profits thereof.

(*c*) The appraised value of the personal property bequeathed to James absolutely and enumerated in his mother's will as live stock, farming utensils and stores, growing and harvested crops and furniture, house goods and family stores, all on the Homestead Farm, and the growing crops on the Norris Farm at the time of her death, amounted to the sum of $4,013.

(*d*) The one-sixth interest of the proceeds of sale of the

Homestead retained by the appellant pending the construction of this will is $4,008.

Therefore, if Mary E. Farnandis' devise of the remainder in fee in the Homestead Farm can be fairly construed to let in James as a remainderman also in an undivided one-sixth *therein after his own life estate*, then her plain plan and intent of an equal disposition of her property will be defeated, because James, by such an inclusive construction of the words "divided amongst my six children" used in disposing of said remainder will have received as his absolute share (exclusive of the value of his life estate)—

  1.  Personal property in and about the Homstead, etc.$4,013
  2.  One-sixth in remainder in fee in the Homestead    4,008

$8,021

whereas his five brothers and sister each receive only  $4,008

If you read into the repeated words of equality in her will, the surrounding circumstances of the testatrix devising James a life estate in the Homestead which was about one-sixth of her real and leasehold estate and also bequeathing to him absolutely $4,013 of personalty, which amount is just about equal to a one-sixth interest in remainder in the Homestead, then the significant connection between them and her plan of disposition which she had in mind, when she used the words in her will, suggests a liberal and reasonable construction to be put upon her words creating the remainder in fee in the Homestead, and therefore those words must be read, "but after his death the said Homestead Farm shall be equally divided among my five children" for—

3.  "It is clear that words and passages in a will, which are *irreconcilable with the general context, may be rejected* whatever may be the local position which they happen to occupy; for the rule which gives effect to the posterior of several inconsistent clauses must not be so applied as in any degree to clash or interfere with the doctrine which teaches us to look for the intention of a testator in the instrument and to sacrifice to the scheme of disposition so disclosed any incongruous

words and phases which have found place therein.   2 *Jarman, Wills*, ch. XV, p. 53.

If in the devise of the remainder in The Homestead, the word "six" be rejected, or changed into the word "five," such a construction will—

1. Be adopted and enforced by a Court of Chancery, because "Equality is Equity" and equality to each of her children was the governing motive in the mind of the testatrix; nor will it be a merely conjectural construction in order to equalize estates in favor of persons with respect to whom the testatrix has expressed no uniformity of purpose;

2. Be entirely consistent with the further surrounding circumstances brought out by the testimony that is to say: James Farnandis was a bachelor and for at least forty years prior to his death was paralyzed from his waist down, and lived in a cottage close to the mansion house on the Homestead. He was extremely attached to the Homestead and desired especially that he should have the whole Homestead for his life. There were the strongest reasons in the mind of the testatrix to devise him a life estate in the Homestead and personalty thereon absolutely, because he would have a comfortable home for the rest of his life and because the Homestead represented about one-sixth of her real and leasehold property, and the personalty one-sixth of the value of the Homestead, and therefore he was in effect enabled to use and enjoy during his life, along with the life estate in the Homestead, property equivalent to a one-sixth interest in fee in the ultimate and final division thereof. No such effective reason can be suggested for devising James an interest in remainder in fee. He had neither wife nor children, nor expectancy of either, at his age or condition of health. His only heir at law would be his brothers and sisters or their representatives.

"Decisions construing other wills are of little use. Sometimes identical cases may be found, but generally the language and provisions of different instruments are so variant and dissimilar that little or no aid in any given case can be

derived from the authorities." *Miller J. in Woollen* v. *Frick*, 38 Md. 444.

The following cases, however, show the application of the third rule stated above:

In *in re Redfern*, 6 Ch. D. 133, words were read into a devise (where the testator was making an equal division of his estate among his seven children) so as to prevent him from dying intestate as to one-seventh.

In *Hart* v. *Tuck*, 2 D. M. & G. 300, the word "fourth" in a will was construed as meaning "fifth" which the context showed was the change required to make the will consistent.

In *Bengough* v. *Edridge*, 1 Simmons (Eng. Ch.) 270, the whole plan of the will was "accumulation," and the word "hereinbefore" was substituted for the word "hereinafter" to effect such purpose of the testator.

4. The words "my said six children" are not only irreconcilable with the general context and plan of disposition of the testatrix, but also contradict the words "after his (James') death" in the same devise. This contradiction can be harmonized by changing the words "six children" to "five children."

It is not unreasonable to suppose that by the frequent use of the terms "six children" in anterior parts of her will the same term was inadvertently used in the devise of the remainder in the Homestead after the death of James, and is therefore a *mere slip in expression.*

There is no affirmative expression in her will, nor any fact among all the circumstances surrounding her at the time she formulated her plan of disposition which suggests an *intent to give James a larger share* in her estate than his brothers or sister, although there is a clear intent to give him his share in a different form, because of his physical condition, and desire to pass the rest of his life at the Homestead. If she had had such an intention in mind, is it reasonable to twist into an expression of that intention such an unusual devise of a fee-simple in an undivided one-sixth interest as James would take if the actual words of that devise be allowed to stand, for the

time of enjoyment of his fee-simple in one-sixth is by the very same devise made dependent on his own death, when everything else in the will points to equality? The conclusions seems irresistible that she intended to give James a *sole life estate* in the *whole* Homestead Farm and all the personal property thereon, and on the Norris Farm absolutely, in lieu of any further interest or estate in the Homestead.

*Rignal W. Baldwin* (with whom was *Charles G. Baldwin* on the brief), for the appellee.

The contention is that James is the only one who must necessarily be dead at the time the property is to be divided. Can we suppose the testatrix or the scrivener did not know this? But her will was drawn by a skillful lawyer who knew the effect of what he had done and that there was no necessity for involved contingent devises. This is an absolute vested interest. *Tiedeman, Real Property,* 397–406; *Hoover* v. *Smith,* 96 Md. 395; *Taylor* v. *Mosher,* 29 Md. 451–455.

"Where an estate is made contingent as to one of a class, it must be so construed as to all." *Watters* v. *Watters,* 24 Md. 446. And so if James' estate was a contingent one that could not vest because of his prior death, how about Edward's, Walter's and Henry's, all of whom predeceased him.

If the time of payment or distribution appears to be postponed for the convenience of the property, the vesting will not be deferred until that time," 29 Md. 453. And if vested, his power to devise is unquestioned. *Small* v. *Small,* 90 Md. 565–6.

A clear legal intent is expressed in the will which is capable of being effectuated. The intent expressed is, simply to give him an absolute interest upon his decease. That this can be done is shown by *Reid* v. *Walbach,* 75 Md. 205; *Rotch* v. *Rotch,* 173 Mass. 125; *Pearce* v. *Vincent,* 2 Keen, 230; *Jarman on Wills,* 5 ed. 2 vol. 677, new ed. 987; *Cosack* v. *Rood,* 24 Weekly Rep. 391; *Smith* v. *Hoover,* 96 Md. 393; *Ware* v. *Rowland,* 2 Phillips' Ch. Rep. 635.

These were all cases where the result that we contend for

was effected by operation of law. But surely no one will contend that a result that can be secured by operation of law *cannot* be secured by express provision. *Smith* v. *Hoover*, *supra*, at 396, says: "If the testator had said after either of the above events the property to be sold and divided equally among those who are entitled to it at the time of my death," there could be no question about it. And when he used a term which has that meaning, in the absence of some intention expressed to the contrary, must it not be given it.

We submit that in the above quotation the Court has completely stated the proposition we are contending for. .

*Jarman* (6 ed.), star page 778, says: "If the words of a will already indicate a method of distribution * * * such words will control no matter how absurd or inconvenient the consequences." And what more apt words could be used to accomplish just the result we are contending for?

What is there in this will that would warrant any Court in saying that Mrs. Farnandis did not say to her scrivener, "I want James to have his life estate in the homestead and also the same interest in the remainder as I have given to his brothers and sister."

We call the Court's attention again to the fact that she uses this same term in her will six different times, sometimes applying it to personalty, and sometimes to realty. But no difference in the construction of items can arise from the fact that some relate to realty alone, and some to realty and personalty, or to personalty alone. *Heald* v. *Heald*, 56 Md. 308; *McElfresh* v. *Schley*, 2 Gill, 200.

The principle on which a specific number in a particular clause of a will has been held not to be binding on the Court are cases where a class is evidently intended to be benefited and the number does not conform to the class. *Kalbfleish* v. *Kalbfleish*, 67 N. Y. 354; *Berkley* v. *Palling*, 1 Russell's Ch. 496; *Moffat* v. *Burnie*, 18 Bevans, 213, 214, 244. The Court says it "could not introduce the word *said* into the will, and that the only duty of the Court was to construe the words to be found in the will itself and not to introduce other expres-

sions into the instrument.    See also *Fitzroy* v. *Richmond,* 27 Bevans, 189.

Therefore the word *"said"* adds an additional specific emphasis to the other words in the case at bar.

But this principle does not apply if the particular ones be pointed out by some additional description, 67 N. Y. 354, 361, quoting 1 *Johns & Hern.,* 250; *Hoover* v. *Smith,* 96 Md. 395.

But our case is stronger even than this last as the class and the names are identical.    In the case at bar, the *number* and the *class* correspond exactly and to achieve the result contended for by appellants the Court must *construct a class* such as

(*a*) All my other children.

(*b*) All my other children living or leaving issue.

(*c*) All my other children living at the time of his death.

(*e*) (*f*) (*g*) *ad infinitum.*

The Court is asked to reject a correct number applied to a specified and enumerated class and to construct a new class consisting of a different number and a different enumeration, and to guess at the class.    Or worse to accept some one's else definition of the class.

BOYD, J., delivered the opinion of the Court.

The appellant was appointed trustee by the Circuit Court for ·Harford County to sell, for the purpose of partition, certain lands which had belonged to Mary E. Farnandis, who died in the year 1888.    Amongst other property sold by him was that known as the Homestead Farm, which he sold for $25,000, and the sale was duly ratified.    An audit was stated and by direction of the Court the trustee retained one-sixth of the net proceeds of sale until it was determined what interest James Farnandis had in this property, under the will of Mary E. Farnandis, his mother.    The Court below having determined that the one-sixth was vested in James, ordered that it be distributed to Elizabeth F. Mitchell, who was the devisee under his. will.    A motion to dismiss the appeal from that order was made on the ground that the appellant had not such

interest in the fund as to authorize an appeal by him, but as the questions involved were fully argued, and at the time of the argument it was not too late for other parties to enter an appeal, we will dispose of the case on its merits, without further reference to the motion to dismiss.

By her last will and testament Mrs. Farnandis gave to her son "James Farnandis for his natural life the Homestead Farm including therein" certain lands, ways, water-courses, rights and privileges mentioned. By succeeding paragraphs she gave him the live stock, farming utensils, crops, furniture, etc., on that farm, and the crops on the farm occupied by David Norris, and then follows this paragraph: "All the rest of my personal property, except my leasehold property in Baltimore City, I give to my children, Henry D. Farnandis, Walter Farnandis, James Farnandis, Edward Farnandis, George G. Farnandis and Elizabeth Mitchell to be equally divided between them share and share alike the share of my daughter Elizabeth to be subject to the limitations and provisions hereinafter prescribed." Although that only refers to personal property, it is important as it is the only place in the will where the names of the *six* children of the testatrix are given.

She then devised to two of her sons all of her real estate and leasehold property, except the lands devised to James, *in trust* to hold them for five years to collect the rents and profits and after paying the taxes, insurance, repairs and other expenses and charges, to divide the net income therefrom "equally amongst my *said six children* annually." She directed that no part of her said real estate or leasehold property should be sold or disposed of during the five years, excepting if the trustees deemed it judicious to sell any of said estate, or to lease any of the unimproved property, they could do so with the consent in writing of all her children who were living. The proceeds of the property so sold, and the rents of that so leased, she directed should be divided *"equally amongst my said six children,"* and after the expiration of the five years the property devised to the trustees *"shall be equally divided amongst my said six children."* And if her daughter

elected within three months after the death of the testatrix to take as part of her share a house and lot on Cathedral street, in the city of Baltimore, she could do so as therein directed, and in that event in the ultimate division of the estate the house and lot were to be "deducted from her *sixth* part of said estate."

The will then continues, "The remainder in fee after the life estate of my son James in the Homestead farm and lands herein specifically devised to him shall be held by said trustees and shall not be sold during the life of said James, but after his death the said Homestead farm and lands so specifically devised to my son James *shall be equally divided amongst my said six children.*" This is the provision which gives rise to the controversy in this case—the appellant contending that inasmuch as James was one of the testatrix's "six children," and by the terms of this devise it only undertakes to give the remainder after his death, she made the mistake of speaking of her *six* instead of *five* children amongst whom it was to be divided. When the testatrix died (in 1888), her six children named in the will were still living. Walter died in 1889, leaving children, and Edward in 1891, intestate and without issue, leaving as his heirs his brothers and sisters and the children of his deceased brother Walter. James died in 1900 and after making various bequests he left all the residue of his property, including his interest in the Homestead farm to Mrs. Mitchell, and therefore the real question to be determined is whether he had any interest in the Homestead farm to devise to his sister, excepting such as he inherited from his brother Edward. As already stated, the testatrix only named her children once—in the residuary clause disposing of her personal property—and James was one of the six then named. After that, in speaking of them she invariably used the term "*my said six children.*" She unquestionably left James a sixth interest in her real estate other than the Homestead farm, and in her leasehold, and she did so by the use of the precise language now being considered—"shall be equally divided amongst my said six children." And then when we look at

the will to ascertain what interests in the Homestead farm were left to the other devisees, we find that they must rely wholly and exclusively on that description of them. There is nothing in the terms of the will itself to indicate that the testatrix intended to give each of her *five* children (other than James), a one-fifth interest, but on the contrary she said these lands "shall be equally divided amongst my said *six* children." They could not be divided equally among six, if some have a fifth interest. The reasons assigned for this contention by the appellant are that the will indicates an intention on the part of the testatrix to have equality, and that by its terms James would be dead before the estate in remainder could be enjoyed, and hence it is argued she would not have intentionally made such provision for him. But if it be admitted that those would be sufficient reasons, if established, to justify us in changing the number of her children intended as devisees from *six* to *five*, we would be met by the fact that the will indicates a clear intention on the part of the testatrix to give James more than she gave the others. She not only left the Homestead farm to him for life, but she gave him absolutely all the live stock, farming utensils, crops, furniture and family stores on that farm and all the crops growing at the time of her death, or harvested on the farm occupied by David Norris. It is stated in appellant's brief that this personalty was appraised at $4,013, and yet in the paragraph in the will next after those bequests, the testatrix gave the rest of her personal property to her *six* children by name, *including James*. So after first giving the Homestead farm to him for life, when she disposed of the remainder she did just what she had done with the personalty and the rest of her realty and leasehold property—directed that it should be equally divided amongst her said *six* children. It should be observed in this connection that when she authorized her only daughter to select the house and lot on Cathedral street, then occupied by Mrs. Mitchell, she expressly directed not only that she should be charged with its value in the ultimate division of the real and leasehold property, but that she should be charged with in-

terest on its valuation from the death of the testatrix and with taxes, insurance and expenses paid by or chargeable to the trustees. It is manifest then that she did intentionally make a distinction in favor of her son James. The testimony offered by those adopting the views urged by the appellant gives what was probably the explanation of this distinction made by Mrs. Farnandis. Her son James was paralyzed from his waist down for many years prior to his death, and he was wheeled around by a servant in an invalid chair. He lived on the Homestead farm in a cottage near the mansion house where his mother lived. Although physicially disabled, his mind was bright and he had charge of the farm and attended to other business for his mother. One of the witnesses said "there always seemed to be on her part the greatest solicitude and care for him, and on his part the disposition to give attention to her matters and manage the property." Under such circumstances it is not strange that a mother would be so touched by the physical condition of her son as to cause her to make some special provision for him and leave him more than she did her other children, and she may have thought that something might occur which would make it desirable for him to have more than a life interest in this farm. It would seem to be much more probable that such was her intention, than to suppose she would have forgotten that this afflicted son would be dead when the time came to divide the Homestead farm.

Nor would the fact that she knew he would be dead when the time for the division arrived be a sufficient reason to justify the Court in changing the terms of her will. Although she postponed the enjoyment of the possession of the remainder until after the death of her son, she gave these six children a vested remainder, and hence each of them could devise, convey or otherwise dispose of his interest, unless restricted by the will, and there was no such restriction attempted to be imposed on James's interest. While it may be unusual, it is by no means unheard of for a testator to devise a life estate and leave the remainder to a class that would include the life

tenant.    In discussing the rule where a devise in remainder is
to the heirs of the testator, or to his next of kin, it is said in
24 *A. & E. Ency. of L.* (2 ed.), 394, "The fact that the de-
visee of the particular estate is one of several persons who at
the death of the testator answer the description of heirs or
next of kin does not prevent the application of the rule.    He
would take jointly with the others a vested remainder."    On
the same page the author refers to the earlier cases which held
that a devise for life to the *sole heir* of the testator, and after
his death to the testator's heirs, was sufficient to exclude the
devisee of the life estate from taking in remainder, and adds
"The later cases, however, state as the correct rule that where
a testator gives property to a tenant for life and on the death
of the tenant for life to the testator's next of kin, and there is
nothing in the context to qualify or in the circumstances of
the case to exclude, the natural meaning of the testator's
words, the next of kin of the testator living at his death will
take; and if the tenant for life be such next of kin, either
solely or jointly with other persons, he will not on that ac-
count be excluded."    In *Reid* v. *Walbach,* 75 Md. 205, there
was a devise in trust for Jane M. Walbach for life, and from
and after her death in trust for her child or children then liv-
ing, etc., but there was no provision made for the contingency
of all her children dying in her lifetime leaving no issue.    It
was held that upon the happening of such contingency the prop-
erty would pass under a residuary clause in the will, and as
Mrs. Walbach was by that clause entitled to one-fourth part
thereof, her contingent interest would pass to her absolutely,
and not subject to the trust.    But we do not understand the
appellant to contend that there was any legal obstacle in the
way of James taking an interest in the remainder left after his
life estate, and hence we need not cite other instances of de-
vises of somewhat similar character.    By this will there was a
vested remainder created, which was expressly left to the *six*
children of the testatrix, all of whom were living at the time
of her death, and hence it is free from complications that some-
times arise in cases of this character, in which tenants for life
are also given interests in remainder.

We are of opinion, therefore, that by the terms used in the will of his mother, James Farnandis took a vested one-sixth interest in the remainder of this property, which by his will passed to Mrs. Mitchell, and there have not been sufficient reasons shown to justify us in determining that the testatrix did not mean what she said but intended to exclude James from the devise.    It is not necessary to discuss the objections to the testimony taken subject to exception as it cannot affect the conclusions we have reached.    The decree below will be affirmed, the costs to be paid out of the funds in the hands of the trustee, reserved for that purpose by the final order of ratification of the audit.

> *Decree affirmed, costs to be paid out of the funds in the hands of the trustee reserved by the order of Court ratifying the auditor's eighth report.*

(Decided March 22nd, 1904.)