FANNIE R. BALL vs. WILLIAM S. TOWNSEND et al., EXECUTORS AND TRUSTEES.

*Construction of Will—Partial Intestacy—Falling in of Annuilies—Gift of Capitalization.*

In construing a will, the testator's intention as gathered from the four corners of the instrument must prevail, and be given full effect, unless that intention violates some settled legal principle. p. 599

A general residuary clause will preclude intestacy as to any part of the estate, unless the clear intent of the will prevents such a construction.                                              p. 600

Where testator, having created a trust as to "all the rest and residue" of his estate, and directed the payment of certain life annuities of named amounts by the trustees, provided further that any excess of net income over what was sufficient to pay said annuities should be divided among the annuitants ratably, the trustees being first satisfied that the value of the estate had not depreciated, and that, on the death of each annuitant, a portion of the corpus of the trust estate, as the same might be then constituted, equal to the capitalization at six per cent. of "the annuity falling in by reason of" such death, should be paid to a named charity, *held* that, in computing the amount falling in and passing to the charity upon an annuitant's death, the share of the excess income payable to the annuitant should be regarded as an additional annuity, and as such given the same effect as his annuity of an amount named.          p. 601

*Decided April 25th, 1924.*

Appeal from the Circuit Court of Baltimore City (DUFFY, J.).

Bill by William S. Townsend and others, executors and trustees under the will of John W. Grace, deceased, against Luther Grace, Fannie R. Ball, the Johns Hopkins Hospital, and others, for the construction of said will. From the decree rendered, said Fannie R. Ball appeals. Affirmed.

The cause was argued before THOMAS, PATTISON, URNER, ADKINS, OFFUTT, and DIGGES, JJ.

*Wm. Mason Shehan* and *G. Elbert Marshall,* with whom were *Seth, Shehan & Marshall* on the brief, for the appellant.

*Alfred S. Niles* and *Chester F. Morrow,* with whom were *Niles, Wolff, Barton & Morrow* on the brief, for the trustees, appellees.

*Charles McHenry Howard,* for the Johns Hopkins Hospital, appellee.

PATTISON, J., delivered the opinion of the Court.

The bill in this case was filed by the executors and trustees under the will of John W. Grace, deceased, in the Circuit Court of Baltimore City, to have construed certain items of said will.

John W. Grace, of Baltimore City, died after the death of his wife, on or about the 26th day of May, 1919, leaving no father or mother, children or descendants surviving him, but leaving surviving him one brother of the whole blood, and children of a brother and three sisters of the half blood, who are named in the bill as his next of kin.

John W. Grace, as the bill alleges, died testate. He, after bequeathing certain legacies and devising property to those mentioned in the will, including some of his next of kin, business associates and others, gave, bequeathed and devised by item eleven of his will *"all the rest and residue"* of his estate to the appellees, in trust, with full powers to change the investments and to invest and re-invest the same in securities thought by them to be safe and proper; and to collect and receive the rents, issues and profits thereof, and after paying therefrom the taxes, insurance and expenses therein named, they were directed to apply the balance being "the net annual income" from the trust estate as follows:

"(1) To pay unto my brother, Luther Grace, in half-yearly installments, so long as he shall live, the annual sum of twenty-five hundred dollars ($2,500), into his hands and into the hands of no other person whomsoever.

"(2) Unto Daisy Hughes, daughter of my brother, in half-yearly installments, so long as she may live, into her hands and into the hands of no other person whomsoever, the annual sum of twenty-five hundred dollars ($2,500), and at her death I direct my trustees to pay from the corpus of my trust estate unto the daughter of Daisy Hughes, if she be living at that

time, the sum of twenty-five thousand dollars ($25,-000).

"(3) Unto Mattie Grace Parlett, wife of Benjamin F. Parlett, in equal half-yearly installments, and so long as she may live, into her hands and into the hands of no other person whomsoever, the annual sum of twenty-five hundred dollars ($2500).

"(4) Unto Annie W. Pennington and Minnie E. Pennington, daughters of Andrew Pennington, in equal half-yearly installments, as long as they shall live, into their hands and into the hands of no other person whomsoever, each the annual sum of twenty-five hundred dollars ($2,500); upon the death of either of them the survivor shall be paid by my trustees the annual sum of five thousand dollars ($5,000) so long as the survivor shall live.

"(5) Unto Benjamin F. Parlett, Junior, Neva Parlett, Mattie Parlett and Hazel Parlett, children of Benjamin F. Parlett, so long as they may live, into their hands and into the hands of no other person whomsoever, each the annual sum of five hundred dollars ($500)."

Then immediately follow items twelve and thirteen of the will:

"Item 12. In the event of the net annual income from my trust estate being more than sufficient to pay the above mentioned annuities, such excess of net income shall be by my trustees divided among the annuitants above mentioned ratably; but before any such division of income shall be made, my trustees, their survivors or survivor of them, or their successors or successor, shall be satisfied that the value of the corpus of my trust estate has not been depreciated in value, from any cause whatsoever.

"Item 13. Upon the death of each and every annuitant above mentioned, a portion of the corpus of my trust estate, as the same may then be constituted, equal to the capitalization, on a basis of six per cent. (6%) of the annuity falling in by reason of the death of the annuitant, shall by my trustees, the survivor

or survivors of them, and their or his successor or successors, be paid, free, cleared and discharged from the trust heieby thereon imposed, or any trust whatsoever, unto the Johns Hopkins Hospital, a corporation of the State of Maryland, to be used by said hospital for its corporate purposes; the intention of this gift, however, being to enable said hospital, by means of the net income derived from this bequest to receive in its pay wards persons of moderate means, who in the judgment of the trustees of the hospital may be unable to pay the full and regular charges in such pay wards, and to give therein to such persons paying according to their means, the same hospital care and attention as pay patients paying the full and regular charges receive in such pay wards."

The bill in this case was filed to have the above items, twelve and thirteen, construed by the court, and it was in respect to them that the court was asked certain questions, the answers to which are found in the decree of the court, from which the appeal in this case was taken. These questions, we think, are sufficiently indicated by the answers given thereto, and we need not lengthen this opinion by inserting them herein.

The court's construction of the will is in its decree above referred to, which is as follows:

"(1) That by the proper construction of the will of John W. Grace, filed as an exhibit in this case, the said John W. Grace did not die intestate as to any part of his estate.

"(2) That by Item twelfth of said will, the question whether or not the value of the trust estate created by said will and now in the hands of the trustees appointed thereby has been depreciated in value from any cause whatever, is committed to the judgment of the trustees.

"(3) That the meaning of the word 'depreciation' as used in the said twelfth paragraph of said will, is something more than a fall in market value, unless such fall is enough to amount, in the opinion of the trustees, to a real and permanent loss of corpus, and

does not refer to a temporary decrease in market value of said securities.

"(4) That there being in this case no allegation or proof of any default on the corpus of any of the bonds included in said corpus of said estate, or of passing of the usual dividends on any of the stocks included in said estate to such extent that in the opinion of the said trustees there has been a permanent depreciation in the said securities according to the proper meaning of the word 'depreciation' as above herein given, the income derived from the securities included in the said trust estate should be paid out in its entirety to the persons designated in said clause as 'annuitants.'

"(5) That if, in the opinion of the said trustees, depreciation as above defined in the value of said trust estate should occur, the trustees shall reserve a sufficient amount of income to make good, in their judgment, the said depreciation, and if at a later date some change should occur in the value of the estate which would make it, in the judgment of the trustees, equitable that the amount so taken from income should be paid out to the annuitants, the said trustees may then apply to this court for direction, but until the condition as above described arises, what action should be taken by the trustees in such case is a matter not ripe for the court's decision.

"(6) That the general intent of the testator in said will can be gratified only by paying over to the Johns Hopkins Hospital at the death of each annuitant a proportion of the whole corpus of the trust estate equal to the proportion of income from said trust estate received by the said annuitant at the time of his or her death.

"It is, therefore, this 28th day of June, nineteen hundred and twenty-three, by the Circuit Court of Baltimore City, adjudged, ordered and decreed:

"First: That the standard or par on which 'depreciation' shall be calculated shall be the market value as of November 3, 1919.

"Second: That such depreciation, however, shall not be calculated in reference to market value unless,

in the judgment of the said trustees, such difference
in market value amounts to a real and permanent loss
of corpus.

"Third: That the calculation shall be made by the
trustees at the end of each fiscal year.

"Fourth: That all the net income received by the
estate up to the date of the end of the last fiscal year
shall be distributed to the annuitants, and all of said
net income shall be so distributed at the end of every
fiscal year hereafter unless the trustees are satisfied
that the corpus of the trust estate is really and per-
manently less in value than it was on November 3,
1919.

"Fifth: At the-death of each of the said annuitants,
except Minnie E. Pennington, Annie W. Pennington
and Daisy Hughes, the said trustees shall pay to the
Johns Hopkins Hospital that part of the residuary
estate which bears the same proportion to the whole
of the said residuum as the amount of income pay-
able to the annuitant so dying, at the time of his or
her death, shall have borne to the whole amount of
income payable to all of the annuitants at such time
and at the death of the one first dying of Minnie E.
Pennington and Annie W. Pennington, the total
amount which would have been received by both of
them had they continued living shall be paid to the
survivor of them during her life, the said two annui-
ties to be treated as a joint annuity, and at the death
of the said survivor, the said trustees shall pay to the
Johns Hopkins Hospital that part of the residuary
estate bearing the same proportion to the whole of
the said residuum as the amount of income payable
to the survivor of the said Annie W. Pennington and
Minnie E. Pennington at the time of her death shall
have borne to the whole amount of income payable to
all of the annuitants at such time; and upon the death
of Daisy Hughes, the said trustees shall pay to the
Johns Hopkins Hospital that part of the residuary
estate which bears the same proportion to the whole
residuum as the amount of income payable to the said
Daisy Hughes at the time of her death shall have

borne to the whole amount of income payable to all the annuitants at such time provided that Miriam G. Hughes, the daughter of said Daisy Hughes, do not survive her said mother, but should said Daisy Hughes die leaving said daughter surviving her, then from the said amount otherwise payable to the Johns Hopkins Hospital as above stated, the trustees shall pay the said Miriam G. Hughes the sum of twenty-five thousand dollars ($25,000.00) and pay the balance of said amount so as above ascertained to the Johns Hopkins Hospital.

"And it is further adjudged, ordered and decreed that in case any contingency may arise which is not provided for by this decree, and where after taking advice from competent counsel the trustees are uncertain as to what action it is proper for them to take, the said trustees may apply to this court for further direction."

The main question presented by this appeal is, did John W. Grace die intestate as to any part of his estate.

The other questions relate chiefly to the administration of the trust and in them the appellant is not, as stated by her counsel in their brief, greatly concerned, especially if the above question be answered in the negative.

The testator died about two years after executing his will, leaving an estate of over seven hundred thousand dollars. He bequeathed certain legacies to certain friends and relatives, amounting in all to seventy thousand dollars. Among the legacies mentioned are ten thousand dollars to each of four nieces of the half blood, including the appellant, Fannie R. Ball, and five thousand dollars to each of two nephews of the half blood.

His residence on Linden Avenue he devised to Minnie E. and Annie W. Pennington, "as joint tenants, for their lives, and for the life of the survivor of them," and from and after the death of the survivor, to his relative, Benjamin F. Parlett, Jr., absolutely; and to each of his business associates therein named, he bequeathed a certain number of shares of

the stock of the Townsend-Grace Company, a corporation engaged in the manufacture of straw hats, in which he was largely interested and out of which business he had amassed his fortune.

It is shown from the record that, after deducting from his entire estate the legacies and devises mentioned, and the costs of the settlement of the estate, there still remained in the hands of the executors the sum of five hundred twenty-four thousand nine hundred fifty-six dollars and three cents. Under the will this amount, which is designated therein as *"all the rest and residue"* of the estate, was turned over to the trustees to be administered by them in accordance with the provisions of the will and for the purposes therein mentioned.

By Item 11 of the will, the trustees were directed to collect and receive the rents, issues and profits from the trust estate and to apply the same, first, to the payment of taxes, insurance and other costs and charges incurred by them in maintaining the trust estate; and then to the payment of the annual stipulated sums therein directed to be paid to the relatives and friends therein named, which are referred to in the succeeding item of the will as "annuities." These annuities in the aggregate amounted to fourteen thousand five hundred dollars, and the amount required to pay them, when capitalized at six per cent. was two hundred forty-one thousand six hundred sixty-six dollars and sixty-six cents. This amount was less than one-half of the corpus of the trust estate. But it is thereafter provided, in Item 12 of the will, that, in the event of the net annual income of the trust estate being more than sufficient to pay the above mentioned annuities, such excess of net income should be by the trustees divided among and paid to the annuitants ratably, if the trustees were satisfied that "the value of the corpus of the estate had not been depreciated in value."

It was by Item 11 that the trustees were directed to pay the stipulated sums therein mentioned to the annuitants; while, by Item 12, the trustees were directed to pay to such annuitants, ratably, the balance of the annual net income derived

from the trust estate. The annuity, as well as the share of the balance of the net income from the estate to which each annuitant was entitled, was paid to him or her so long as he or she lived. It is therefore shown that it was the wish and the intention of the testator that such annuitants, the testator's friends and relatives, were to receive the benefit of his estate so long as they lived to enjoy it; and it is disclosed by the record that all of his next of kin were recipients of his bounty, some as legatees alone, and others as both legatees and annuitants, with the exception of one nephew, and why he was not made a beneficiary under the will is shown by the fact that the testator had rendered to him financial aid by lending to him money which he never repaid.

Item 13 of the will deals with the ultimate disposition of the corpus of the trust estate when the trust ceased to exist. The contention of the appellant, that the testator died intestate as to a part of his estate, arises out of the language used by the testator in this item of his will, in which he says:

"Upon the death of each and every annuitant * * * a portion of the corpus of my trust estate, *as the same may then be constituted,* equal to the capitalization on a basis of six per cent. (6%) of the annuity falling in by reason of the death of the annuitant, shall by my trustees * * * be paid free, clear and discharged from the trust hereby thereon imposed * * * unto the Johns Hopkins Hospital * * * to be used by said hospital for its corporate purposes; the intention of this gift, however, being to enable said hospital by means of the net income derived from this bequest to receive in its pay wards persons of moderate means who, in the judgment of the trustees of the hospital may be unable to pay the full and regular charges in pay wards and to give therein to such persons paying according to their means the same hospital care and attention as pay patients paying the full and regular charges receive in such pay wards.

"I desire this fund to be known as 'The John W. Grace Fund, to Enable the Johns Hopkins Hospital to Extend the Benefit of its Pay Wards to Persons

of Moderate Means,' to be so carried on the books of
the hospital, and so mentioned in its several annual
reports."

It is not claimed by the appellant that any part of the
estate of the testator, after the deduction of the legacies, de-
vises, and the costs and expenses of the settlement of the
estate, did not pass into the trust estate, but it is claimed by
her that only so much of the corpus of the trust estate as was
required to produce the annuities mentioned in Item 11
of the will, which were the stipulated amounts to be paid the
annuitants, "fell in" or passed to the hospital upon the death
of the annuitants, and that in ascertaining the amount falling
in, or passing to the hospital, the sums paid to each of the an-
nuitants as his or her ratable share of the excess net income of
the trust estate was not to be considered, as such amounts,
as claimed by her, "were not annuities" within the meaning
of the will, in which it is said, "Upon the death of each and
every annuitant above mentioned, a portion of the corpus of
my trust estate, as the same may then be constituted, equal
to the capitalization, on a basis of six per cent. (6%), of
the *annuity* falling in by reason of the death of the annui-
tant, shall by my trustees, * * * be paid, * * * unto the Johns
Hopkins Hospital" etc.; and, therefore, as only the corpus
required to produce the annuities in Item 11, was included in
the above quoted provision of the will, the balance of the
corpus of the trust estate was left undisposed of by it when
the trust ceased to exist, and as claimed by the appellants,
the testator died intestate as to that part of his estate.

It is a cardinal rule to be applied in the construction of
wills that the testator's intention as gathered from the four
corners of the instrument must prevail, and his intention
given full effect, unless that intention violates some settled
legal principle. *Johnson* v. *Safe Deposit and Trust Com-
pany*, 79 Md. 18, and other cases decided by this Court.

In the case above cited JUDGE McSHERRY, in discussing
the question of intestacy therein raised, said "the mere fact
of his (the testator) having made a will furnished in itself

a strong presumption that he had no such intention, and when the whole context of the will discloses by all its interdependent and harmonious provisions an entirely opposite design, courts will or ought to struggle against an intestacy which can only arise as a result of a forced and unnatural construction."

In this case there is not only the presumption mentioned above, but the testator, after making certain bequests and devises, gave, devised and bequeathed, in language unmistakable in its meaning, *all the rest and residue of his estate,* in trust to those mentioned therein as trustees, for the purposes therein stated.

In *Holmes* v. *Mackenzie,* 118 Md. 215, this Court said, speaking through Judge Urner, "the principle is elementary that a general residuary clause will be held to preclude intestacy as to any part of the estate, unless the clear intent of the will prevents such a construction."

In this case it is claimed the intestacy exists in the alleged fact that the testator failed to make ultimate disposition of a part of the corpus of the trust estate after the trust had ceased.

To give the will this construction it not only should clearly appear that there was such a failure on the part of the testator, but that it was the testator's intention not to make disposition of that part of the corpus of the estate of which it is claimed he died intestate.

The testator, a man of large means, accumulated through his own efforts, having no relatives other than collaterals, and most of them nephews and nieces of the half blood, with no special claim upon his bounty, conceived the idea of devising his fortune, or a large part of it, to be used for charitable purposes. To this end he, by his will, after making the bequests and devises above mentioned, created said trust estate amounting to over a half million of dollars; and while the issues and profits from it were first to be paid to certain of his said friends and relatives, as apportioned by him in his will, so long as each of them lived, his chief object and

purpose in creating the trust estate was to create a fund which was ultimately to go to the Johns Hopkins Hospital to be used by it for the charitable and humanitarian purposes already mentioned.

To accomplish the object sought by the testator to an extent consistent with his pride and interest in the undertaking, and in keeping with the great institution in and by which the object was to be accomplished, a large fund was required, and this fact was known to and recognized by the testator, as shown by the solicitude exhibited by him in guarding against any reduction of the corpus of the trust estate.

As said in the brief of the counsel for the hospital: "Is it conceivable that he should have made careful provision against the impairment of the corpus of a trust which was far more than sufficient to produce the fixed initial allowances, and more than twice sufficient to provide a fund equal to the capitalization of such fixed allowances at six per cent., merely in order to swell the ultimate value of a surplus capital which he was so indifferent about that he failed to dispose of it at all by his will?" A negative answer is, we think, the only logical reply to this question.

In computing the amount "falling in" or passing to the hospital upon the death of an annuitant, the share of the excess income payable to him or her under Item 12 of the will should, we think, be regarded as an additional annuity, and should be given the same effect as the annuity payable to such annuitant under Item 11 of the will.

There are some expressions and provisions in the will that may appear inconsistent with such conclusion when not considered in connection with other parts of the will, but the apparent effect of these are outweighed and overcome by the general scheme and intention of the testator to dispose of his entire estate as gathered from the whole will. *Payne* v. *Payne,* 136 Md. 551.

It is sufficiently clear in our opinion that the testator did not die intestate as to any part of his estate, as was held by the trial court.

The other answers to the questions propounded to the court have been carefully examined by us, and as we find no error committed by the court in respect to them, the decree appealed from will be affirmed.

> *Decree affirmed, the costs to be paid out of the estate.*