(Decided 16th July, 1879.)

WATKINS JAMES (OF BENNETT) *vs.* ISAAC N. ROWLAND.

*Construction of a Will containing a Devise over after an Indefinite failure of Heirs, made prior to the Act of 1862, ch. 161.*

The will of W. J. dated the 29th April, 1848, and admitted to probate April 10th, 1849, contained the following clause: "*First*, I give and bequeath to my son B. the farm which I have lately purchased of G. W. D., containing one hundred and seventeen acres more or less, to hold the same only during his natural life, and after his death to fall to his son W. J., should he be living, to have the same, he and his heirs in their own proper right and behoof forever, but if the said W. J. should die without heirs, then I will and direct that the said farm be sold and the proceeds arising therefrom be equally divided among my four children or their heirs, viz., the heirs of A. J., deceased, C. C., J. F. and W. J., Jr., share and share alike; the share to which the said W. J., Jr. may be entitled to be equally divided between his two children F. and L J.   But it is my will and I hereby further direct that the said farm shall be, and I hereby charge it with the sum of twelve hundred dollars to be paid by my son B., or if he be dead, by his son J., to be paid in three equal annual instalments after my decease." HELD:

James *vs.* Rowland.

1st. That the Act of 1862, ch. 161, regulating the construction of certain doubtful expressions could not be resorted to in aid of the construction of this will which took effect and created vested interests in 1849.

2nd. That it was clear the testator meant to give to his son B., only a life estate, and that if on B's death the testator's son W. J. was living, he was to take an immediate fee; and if when the life estate ended W. was dead, but he had descendants living, they would take a fee, and that only on failure of both these contingencies at the death of the tenant for life was the attempted executory devise to take effect.

3rd. That the limitation over was upon the failure of *heirs generally*, which being an indefinite failure, could not be supported, no matter to what time such failure is supposed to refer, the life tenant's death, or the death of W. in the life-time of the tenant, or at W's death whenever it should occur.

APPEAL from the Circuit Court for Washington County, in Equity.

The bill in this case was filed by the appellant to compel the specific performance of a contract made between himself and the appellee for the sale to the latter of a farm which the complainant claimed to own in fee under a devise, the terms of which are set forth in the opinion of the Court. The property was devised to him after the death of his father, who is alleged in the bill to be dead. The defendant, in his answer, admitted the contract and the death of the life tenant, but resisted a compliance with the contract, on the ground that by the terms of said will the complainant only had a life interest in said land, and could not give him a fee simple title thereto. By consent a *pro forma* decree was passed by the Court below, dismissing the bill and ordering and directing the said contract to be surrendered and cancelled.

The complainant appealed.

The cause was submitted to BARTOL, C. J., BRENT, GRASON, ALVEY, ROBINSON and IRVING, J.

*John L. McAtee* and *A. K. Syester*, for the appellant.

When no other point of time is certainly pointed out by the words of a will, at which an ulterior or future. estate is to take effect, it will be construed to refer to the lifetime of the testator, or if there is a preceding particular estate, then upon the termination of that. *Howe vs. Pillans*, 2 *Mylne & Kean*, 20, 21; *Cambridge vs. Rous*, 8 *Ves.*, 21; *Briggs, et al. vs. Shaw*, 9 *Allen*, 517; *Ommaney vs. Bevan*, 18 *Vesey*, 291; *Hinckley vs. Simmons*, 4 *Vesey*, 160; *Galland vs. Leonard*, 1 *Swan*, 161; *Hervey vs. McLaughlin*, 1 *Price*, 264; *Doe vs. Sparrow*, 13 *East.*, 359; *King vs. Taylor*, 5 *Vesey*, 806; *Wright vs. Stephens*, 4 *Barr. & Ald.*, 574.

These rules would be sufficient to determine a devise made in terms doubtful and uncertain. Their aid would not seem to be required here, for estates could not be created in terms more clear and certain than those which devise "to my son, Bennett, to hold the same only during his natural life, and after his death to fall to his son, Watkins James, should he be living, to have the same, he and his heirs, in their own proper right and behoof forever."

The latter estate is a gift in fee, and as such, will not be cut down or abridged by subsequent ambiguous words.

Where an estate is by former clauses of a will, given so as to vest absolutely, it can only be revoked, altered and retracted by the most plain and unambiguous proviso. *Howe vs. Pillans*, 2 *My. & K.*, 26; *Briggs, et al. vs. Shaw*, 9 *Allen*, 418; *Thornhillvs. Clark*, 2 *Clark & Fin.*, 36; *Abbott vs. Middleton*, 7 *H. L. Cas.*, 84, 102.

Another provision of this will is sufficient to support the fee contended for, even if no express words had been used. This is found in the last clause of the same "first item" in the "charge upon the farm to be paid by my son Bennett, or if he be dead, by his said son, —— James, to be paid in three equal annual instalments, after my decease."

This is a gross sum charged not only upon the lands, but is a personal charge; is to be paid at all hazards; implies, therefore, a power to sell, and is of itself sufficient to vest a fee.

Such a charge will create a fee where the interest has not been specified. The relative value of the charge to the estate makes no difference. The contingent or future nature of the charge does not prevent it from enlarging the estate. 2 *Jarman on Wills*, 172, *side; Smith vs. Tyndale*, 2 *Salkeld*, 685; *Doe vs. Richards*, 3 *Term*, 358; *Moore vs. Heareman, Willes*, 440; *Goodtitle vs. Maddern*, 4 *East*, 496; *Doe vs. Snelling*, 5 *East*, 87, 91; 2 *W. Blk.*, 104; *Doe vs. Holmes*, 8 *Durn. & East*, 1; 2 *Cowper*, 657; 10 *Wheaton*, 231; *Gardner vs. Gardner*, 3 *Mason*, 309, 312; *Wait vs. Belding*, 24 *Pick.*, 129; *Gibson vs. Horton*, 5 *H. & J.*, 180; *Beall vs. Holmes*, 6 *H. & J.*, 208, 216, 220.

These considerations make it clear, that the clause from which doubt has arisen, provided for the disposition of the farm in question, in case Watkins James died without heirs, during the continuance of the life estate of Bennett, and was alternative, and not intended as a revocation of the absolute estate just before devised to him, Watkins, after the death of Bennett, should he be living.

*William Kealhoffer,* for the appellee, submitted on the record.

IRVING, J., delivered the opinion of the Court.

The decision of this case, which comes up on appeal from a *pro forma* decree passed by consent, depends upon the proper construction to be given to the following clause of the will of Watkins James, dated the 29th day of April, 1848, and admitted to probate April 10th, 1849:

"First, I give and bequeath to my son Bennett, the farm which I have lately purchased of George W. Dillahunt, containing one hundred and seventeen acres, more

or less, to hold the same only during his natural life, and after his death to fall to his son, Watkins James, should he be living, to have the same, he and his heirs, in their own proper right and behoof forever; but if the said Watkins James should die without heirs, then I will and direct that the said farm be sold, and the proceeds arising there-from, be equally divided among my four children or their heirs, viz., the heirs of Abram James, deceased, Cordelia Coffman, Jamima Farren, and Watkins James, Jr., share and share alike; the share to which the said Watkins James, Jr., may be entitled, to be equally divided between his two children, Francis and Louisa James. But it is my will, and I hereby further direct, that the said farm shall be, and I hereby charge it with the sum of twelve hundred dollars, to be paid by my son Bennett, or if he be dead, by his son — James, to be paid in three equal annual instal-ments, after my decease."

The question is, what estate did Watkins James, son of Bennett James, take in the land in question? It is per-fectly clear that if Watkins should be living at the death of Bennett, the testator intended him to take a fee, and used the most apt words to effect that purpose. The only question is, are there any words in the will making a fee defeasible at any time; and making a good, executory de-vise over? The Act of 1862, ch. 161, regulating the con-struction of certain doubtful expressions in a will, cannot be resorted to in aid of the construction of this will, which took effect and created vested interests in 1849. Like the statute of England of 1837, from which it was evidently copied, it creates a change in the common rule of inter-pretation, and only affects wills made and executed after-wards, for the patent reasons that the testator is always to be understood as using the words employed, in the sense attaching to them at the time he uses them, and that the devisee is entitled to the construction they would have received at the time they became operative, had the ques-

tion arisen, without being affected by an after-established statute, applying a new meaning to the words. Applying the long established rules of construction, we have no hesitation or difficulty in determining the true meaning of this testator, or of the words he uses to convey it. It is clear that he meant to give to his son Bennett only a life estate, and that if on Bennett's death, his son, (testator's grandson) Watkins James, was living, he was to take an immediate fee; and if when the life estate ended Watkins was dead, but he had descendants living, they were to take a fee, and that only on failure of both these contingencies at the death of the tenant for life, was the attempted executory devise to take effect. The language he uses is as strong as any that could be employed to create a fee in Watkins, "to him and his heirs in their own right and behoof forever." The limitation over is upon failure of *heirs generally,* which, being an indefinite failure, cannot be supported, no matter to what time such failure is supposed to refer — the life tenant's death, or the death of Watkins in the life-time of the tenant, or at Watkins' death, whenever it should occur. Technical words will always receive a technical construction, and be held as used in their technical sense, unless the contrary clearly appears from the context; and where the same word is used twice, in relation to the same subject, it will be held as meaning the same thing in both instances, unless the contrary appears. 2 *Jarman on Wills,* 526, *and* 2 *Wms. Ex.,* 971–973.

It is possible the testator meant *descendants* by the term *heirs* in the executory devise, but if he did it would not alter the necessary effect of not restricting the failure of such descendants to a definite period. So that it really makes no difference whether the testator intended to refer to such failure of "heirs" at the death of the tenant for life, or at the death of his son Watkins, whenever that might occur. The result would be the same. If there

could be any doubt as to the testator's intention, that his grandson should have a fee, if he lived to come into possession, at his father's death, the charge imposed on his father, and then on him, of twelve hundred dollars to be paid in three equal annual instalments, would solve it. Such charge, personal in character, and charged on the land in *their* hands, without any words of inheritance, have always been held to imply a fee. *Jackson vs. Bull,* 10 *Johnson,* 148–151; *Goodtitle vs. Maddern,* 4 *East,* 496.

Inasmuch as we think Watkins James, son of Bennett, upon his surviving his father, took an unquestionable fee in the land devised to him, and no other objection is made to the execution of the contract of sale according to its terms, the decree will be reversed and cause remanded, to the end that a proper decree for specific performance, according to the terms and stipulations of the contract set out in the proceedings may be passed.

*Judgment reversed with costs,*

*and cause remanded.*

(Decided 16th July, 1879.)