CARRIE W. HOLMES, Administratrix of Edward Abbott Holmes, *vs.* THOMAS MACKEN-ZIE, Trustee, et als.

*Wills: construction; "rest and residue"; presumption against intestacy. Rule in Shelley's Case.*

A general residuary clause precludes intestacy as to any part of the estate, unless the clear intent of the will prevents such a construction.                                    p. 215

The words, *rest and residue,* are in themselves comprehensive enough to include any interest in the estate of the testator not previously devised or bequeathed.                    p. 215

In construing wills the safest course is to abide by the words of the testator, unless upon a consideration of the whole will there is something amounting almost to a demonstration that the plain meaning of the words used is not the meaning of the testator.                                    p. 215

Every intendment is to be made against holding a man to have died intestate, who attempts to dispose of the residue of his property.                                    p. 215

A testator by his will left a sum of money to be invested by his executors, etc.—the income to be paid to his wife, during her life, or widowhood: in case she re-married, one-third the income to be paid her for life: *all* the rest and *residue* of his estate he devised to his children, subject to certain limitations: *held* subject to the wife's estate, this fund formed part of the residue of the estate, and would eventually go to the children, subject to those limitations.

p. 216

The Rule in Shelley's Case (abrogated by the Acts of 1912, (ch. 144), was not favored in law, as it disregards the testator's expressed intent.                                    pp. 216-217

It is never applied except when the manifest purpose of the disposition is to vest the title after a termination of the life estate in precisely the same classes of persons to whom it would pass if the life tenant, dying intestate, were the owner of the entire estate. p. 217

By a will there was a gift to each of the testator's children for life, and after the death of any child, then that share or portion to go to the children of such deceased child, *then living,* and to their heirs absolutely, but in the event of the death of any life tenant without issue living at the time of his death, then to such of the testator's children who might then be living to be held under the same limitations as the respective shares bequeathed to them in the first instance; *held that* to such limitations the rule in Shelley's Case did not apply. p. 217

*Decided May 10th, 1912.*

Appeal from the Circuit Court for Baltimore County, in equity (BURKE, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, THOMAS, URNER and STOCKBRIDGE, JJ.

*Richard S. Culbreth,* for the appellant.

*Thomas Mackenzie* (with whom were *Ogle Marbury* and *H. Findlay French* on the brief), for the appellees.

URNER, J., delivered the opinion of the Court.

William Holmes, of Baltimore county, died in the year 1881, leaving a will, executed ten years previously, which created an estate in favor of the testator's widow during her life or widowhood in a designated lot of ground in Baltimore City, upon which it was recited that he was about to erect a dwelling, together with the household furniture of

which the testator should die possessed, with remainder to his sons successively for life in the order of their ages, and with provision for the ultimate sale of the property and division of the proceeds equally among all the testator's grandchildren. It was provided that all of the children should have a home in the dwelling mentioned until their marriage. The will then proceeds as follows:

"I also order and direct that the sum of one hundred thousand dollars be invested by my executors, in good and safe ground rents in the City of Baltimore, the income and rents derivable therefrom to be paid to my said wife, Anna P. Holmes, so long as she remains my widow, and in case she marries again, one-third of said rents and income to be paid to her from the time of said marriage until her death."

"All the rest and residue of my estate, real, personal and mixed, I order and direct to be divided in as many parts as I may leave children living at the time of my death, each child to have one of the said parts, to be held by them for and during the term of their natural lives, respectively, and from and immediately after the death of each one of said children, then the said share or portion to go to the child or children of the said deceased child then living, and to their heirs and assigns absolutely, but in the event of the death of any one of my said children without leaving lawful issue living at the time of his or her death, then the share or portion of the one so dying to go to such of my children that may then be living, to be held as the share or portion herein devised to each of my children is held, with the same limitation over to the children of such child or children, and in order that the rest and residue of my estate may be equally divided among all my children and their descendants, as herein provided, I direct that all sums of money that may be given by me to my children upon their marriage, and in case my life insurance policy in the New York Mutual Life Insurance Company shall be payable to any one or two of my children, then in that event, I direct that all such sums of money shall be charged to said children, respectively."

The testator was survived by his wife, named in the will, and by seven children, two of whom were adult daughters born of a former marriage. The widow continued to occupy with her children the home described in the will until her death, which occurred in 1884. Her stepdaughter had been married for a number of years and resided elsewhere. The estate remained unsettled during the lifetime of the widow, and the separate investment of $100,000.00 directed by the will was not made, but she received the whole income of the estate until the time of her death. The home property was subsequently sold under proceedings in equity upon allegation and proof that a sale and investment of the proceeds under the limitations of the will would be for the benefit of all parties interested. Independently of this property the estate consisted principally of a ground rent having a redeemable value of about $127,000.00 and securities appraised at approximately $33,000.00. This portion of the estate has been held and administered by successive trustees appointed by the Circuit Court for Baltimore County as an entire trust without any division of the corpus, the income being paid since the death of the widow to the life beneficiaries mentioned in the residuary clause of the will. The ground-rent was eventually redeemed, and a considerable increase in value over the appraisment was realized from the sale of certain shares of stock. The estate as now invested amounts to about $178,000.00.

The testator's eldest son, Edward Abbott Holmes, died intestate and without issue on June 24th, 1911. He was survived by a widow to whom letters of administration on his estate were issued. The other children of the testator are all living, and there are a number of grandchildren. The administratrix of the estate of the deceased son filed a petition in the equity cause in which the trust has been administered naming the present trustee and all the testator's children and grandchildren in being as parties, praying for a construction of the will, and asserting, as the correct theory

of interpretation, that the fund of $100,000.00, directed to be invested for the benefit of the widow of the testator during her life or widowhood, did not pass by way of remainder under the residuary clause of the will, but was distributable as in case of intestacy, and that in any event, under the limitations governing the disposition of the residuary estate, the entire title was vested in the testator's children by virtue of the Rule in Shelley's Case. Upon this theory the contention is made that Edward Abbott Holmes was entitled, in his separate and absolute right, from the time of his mother's death, to one-seventh of the whole estate which has since been held and administered upon the assumption that it was subject to a continuing trust. This contention was not sustained by the learned judge who decided the case below, and from his order dismissing the petition the administratrix has appealed.

It is argued that the words "rest and residue" were not used in this instance by the testator in the general sense of comprehending every interest in his estate of which he had not made previous disposition in his will, but that they were intended to indicate only the residue in the hands of the executor after the investment of $100,000.00 in ground-rents, and that even if the interest in remainder in that fund is properly to be included in the residuary estate, the Rule in Shelley's Case is effective, directly or by analogy, to vest a complete title in the children of the testator to that portion of the estate, because, as it is asserted, the property is made to pass after the life estates to the same classes of persons who would take if the respective life tenants were the absolute owners and died intestate.

In support of the first of these propositions it is pointed out that after providing for the investment of the $100,000.00 fund the testator directed that all the rest and residue of his estate be divided into as many parts as he might have children living at the time of his death and that, after due equalization on account of marriage gifts and life insurance payments, each child should have one of the shares, "to

be held by them during the term of their natural lives respec-
tively," and it is urged that the testator could not have
intended the interests in remainder in a fund which was to
be invested for the benefit of his widow for her life or
widowhood to be included in a residuary estate which was
made subject to division among his children as of the time
of his death.

The principle is elementary that a general residuary clause
will be held to preclude intestacy as to any part of the
estate, unless the clear intent of the will prevents such a
construction.  As the words "rest and residue" are in them-
selves comprehensive enough to include any interest in the
estate of the testator not previously devised or bequeathed,
"the safest course," to use the language of Lord Eldon, "is
to abide by the words unless upon the whole will there is
something amounting almost to demonstration that the plain
meaning of the words is not the meaning of the testator."
*Crooke* v. *De Vandes,* 9 Vesey, 197; *Hambleton* v. *Darring-
ton,* 36 Md. 445.

In *Lavender* v. *Rosenheim,* 110 Md. 153, it was said:
"The abhorrence of Courts to intestacy, under a will, may
be likened to the abhorrence of nature to a vacuum," and
that such a result will "never be reached if it can be avoided
without violation of clearly controlling legal principles."
The opinion of Judge Pearce in that case quoted with
approval the language of Lord Alvanley, M. R., in *Booth*
v. *Booth,* 4 Vesey, 407, as previously quoted by Judge
Alvey in *Dulany* v. *Middleton,* 72 Md. 75, that : "Every
intendent is to be made against holding a man to die intes-
tate, who sits down to dispose of the residue of his property."
In *Barnum* v. *Barnum,* 42 Md. 311, it is declared that there
is "always a strong disposition in the Courts to construe a
residuary clause so as to prevent an intestacy with regard to
any part of the testator's estate, unless there is an apparent
intention to the contrary," and it was held to be "imma-
terial how it happens that any part of the property is undis-
posed of—whether by the death of a legatee, or by the fail-

ure of the testator to provide for all the events that may
happen upon which the bequest may depend for its complete
effect." In that connection the statement of Sir William
Grant, in *Leake* v. *Robinson,* 2 Meriv. 392, is quoted,
that: "* * * it must be a very peculiar case indeed in which
there can at once be a residuary clause and a partial intes-
tacy, unless some part of the residue itself be not well
given."

In the case before us the terms of the will do not, in our
judgment, require the construction for which the appellant
contends and which would result in an intestacy as to more
than half of the testator's estate. We fully concur in the
opinion expressed by Judge Burke below, that there is
"no good reason why a partial intestacy should be forced
upon the testator by giving to the words 'all the rest and
residue of my estate, real, personal and mixed' used in the
third item, the restrictive meaning which would work that
result." When we consider that the provision referring to
the $100,000.00 fund did not merely limit the widow to a
life interest, but contemplated that in the event of her re-mar-
riage she was to receive but one-third of the income for life,
it is evident that we should have to resort to a much narrower
construction than the settled rule we have stated would per-
mit, in order to hold that the testator did not intend the resi-
duary clause to include the substantial interest in the fund
remaining for the disposition after the primary and partial
bequests were satisfied. While the direction as to the residue,
requires that it be divided into as many shares as there were
children of the testator living at the time of his death, it does
not necessarily restrict the division to that particular period,
or prevent the gratification of the general intent, clearly
apparent from the whole will, that, except as to the home
property, the entire estate of the testator should go eventually
to his children equally for life with the remainders indicated.

The question raised as to the application of the Rule in
Shelley's Case to the limitations of the residuary clause has
given us no difficulty. This rule is not favored in the law

as it disregards the testator's expressed intent. *Hall* v.
*Gradwohl,* 113 Md. 297; *Reilly* v. *Bristow,* 105 Md. 332.
It has been abrogated by statute as to instruments executed
after May 31, 1912. (*Acts of 1912,* Chapter 144.) It is
never applied except when the manifest purpose of the dis-
position is to vest the title, after the termination of the
life estate, in precisely the same classes of persons to whom
it would pass if the life tenant, dying intestate, were the
owner of the entire interest. This condition existed in the
case of *Cook* v. *Councilman,* 109 Md. 622, on which
the appellant mainly relies. In that case the devise was to
one for life and upon the death to his child or children and
their heirs, and in the event of the death of the life tenant
without leaving a child or children or descendant, then to
such persons as would, under the laws of Maryland, inherit
the property as *his* heirs, if he had died intestate and seized
in fee. The limitations in the present case are essentially
different. The gift as to each of the testator's children is
to the child for life and after his death to his child or children
then living, and to their heirs absolutely, but in the event
of the death of the life tenant without issue living at the
time of his death, then to those of the *testator's children who
may then be living,* to be held under the same *limitations*
as the respective shares devised and bequeathed to them in
the first instance. It is plain that, under the provisions as
to the remainder at the expiration of any particular life
estate, the property is not made to take the same course of
descent and distribution it would follow if the life bene-
ficiary held the absolute estate and died intestate. He is
not made the "terminus or ancestor by reference to whom
the succession is to be regulated." *Hall* v. *Gradwohl, supra;
Fulton* v. *Harman,* 44 Md. 263. Upon his death without
issue the estate is not given to those who may be *his* heirs,
or even to the heirs of the testator generally, but the remain-
der is expressly limited to the testator's *children then sur-
viving.* To such a limitation it is clear the Rule in Shelley's
Case does not apply.

The appellant's intestate, as a life beneficiary under the residuary clause of his father's will, was entitled to a due proportion of the income of the entire estate from the time of his mother's death in 1884 until his own death in 1911, and this he appears to have regularly received; but according to the plain purpose of the will, he was not entitled absolutely to any part of the corpus of the estate, and the petition of his personal representative asserting such a right was properly dismissed.

> *Order affirmed, the costs to be paid out of the trust estate.*