## McCURDY *v.* SAFE DEPOSIT & TRUST CO. OF BALTIMORE

[No. 95, October Term, 1947.]

68

*Decided February 20, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*J. Cookman Boyd, Jr.,* and *Samuel K. Dennis,* with whom were *George O. Blome* and *Martin W. Seabolt* on the brief, for the appellant.

*F. Fulton Bramble* and *William B. Kempton,* with whom was *Randolph Barton, Jr.,* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

The question involved in this case is the construction of the residuary clause of the will of Charles M. Tickner. He died on January 27, 1939 and his widow, L. Katherine, died August 16, 1946. By her will she left all her property to her two daughters and appointed them her executrices. The daughters, however, renounced, and the Safe Deposit and Trust Company was appointed administrator, C. T. A. In that capacity it filed the bill of complaint herein, asking the Circuit Court of Baltimore City to construe the will of Charles M. Tickner and declare that all of the residue of his estate went to his widow absolutely. The appellant, who was the daughter of Mr. Tickner by his first wife, answered, and contended that the proper construction of the will was that Mrs. Tickner took only a life estate. The case was heard upon an agreed statement of facts and the Chancellor determined that the proper construction of the will was that the residue of the estate went absolutely to Mrs. Tickner and passed to her estate. From a decree so ordering, the daughter by the first wife has appealed.

Mr. Tickner had three daughters. One, Anna, the appellant, was the daughter of his first wife, and the other two, Elizabeth and Dorothy, were the daughters of his second wife, who survived him. This is, apparently, not a case where there was any dissension in the family. It was so stated at the argument before us and intrinsic evidence of an intention to treat all three daughters alike appears in the will. Nevertheless, the result of the interpretation of the will made by the Chancellor is a great inequality between the shares of their father's estate which the three daughters will receive. That is because of the will of Mrs. Tickner which left all of her estate to her own daughters and did not mention her step daughter. While such an inequality cannot influence a court in its duty to find out what a testator meant by his will, it may be, and should be, considered in a doubtful case to find out what was probably in the mind of the testator.

In this case, the testator was a well known and successful undertaker who left a net estate of about $140,000. It is stipulated by the parties that the will was made by him in his own handwriting, that he then gave it to a typist who copied it without change as to spelling, punctuation or otherwise and the resulting typewritten copy was duly executed. An examination of his will shows that it contains numbered paragraphs designated as first, second, third and fifth. The first, second and fifth paragraphs, which have no bearing on this case, were obviously drafted by a lawyer. The first part of the third paragraph also contains internal evidence that it was prepared by a competent scrivener. After this part, however, there are four unnumbered paragraphs, which, for purposes of easy reference, we will letter "A", "B", "C", and "D". The internal evidence of these paragraphs just as obviously shows that in the preparation of them Mr. Tickner did not have any competent legal advice. There is no paragraph four in the will. It may be suspected, although it has no particular bearing on the issues before us, that there was a previous will in which there was a paragraph four, that this paragraph four was omitted in Mr. Tickner's draft and paragraphs "A", "B", "C" and "D" were inserted in place of it. However that may be, we are confronted with the will Mr. Tickner actually executed, and in order that the problem before us may be more adequately understood, we insert here paragraph third and paragraphs A, B, C and D:

"Third: I give and bequeath to my wife, L. Katherine Tickner, if she survives me but not otherwise, six hundred and fifty-five (655) shares of the Seven Per Cent (7%) Preferred Stock of William J. Tickner and Sons, Inc. for and during the term of her natural life. During her life, my said wife shall have the right to hold and vote said stock and to receive the entire income therefrom or from any reinvestment of the proceeds of the sale thereof and my said wife shall be fully empowered at any time and from time to time, to sell, exchange, invest and re-

invest, or in any other manner dispose of all or any part of said stock and also any property representing the reinvestment of the proceeds of sale thereof or of the proceeds of any subsequent sales, including the absolute interest therein and including the remainder as hereinafter provided for, as well as the life interest, without the sanction, authority of or previous application to or ratification by any court, and in such manner that no one dealing with her shall be required to see to the application of the proceeds of any sale or other disposition. It is my intention that the powers of sale, exchange and other disposition heretofore conferred upon my said wife shall be limited to the sale, exchange or other disposition of the property for the purpose of investment or reinvestment and shall not be construed as authorizing or empowering her as life tenant to consume the corpus of said property. After the death of my said wife, or after my death should she predecease me, the afore-said stock or property representing the reinvestment of the proceeds thereof shall become a part of and be disposed of in the same manner as the residue of my property and estate.

"A. I also give to my wife L. Katherine Tickner 40,000 dollars worth of Bonds of Wm. J. Tickner & Sons as long as she lives to draw the interest monthly and at here death the bonds to go to my two daughters Elizabeth and Dorothy Tickner 20,000 each and they to draw the interest monthly, and all the rest of my property to my wife she to do as she pleases except the Maryland Metal Casket Co. stock, she to draw the interest on the money invested there and the profit of my share—and at her death to go to the three daughters Anna I. Elizabeth and Dorothy Tickner.

"B. To my daughter Anna I. Tickner she to get 20,000 dollars of the Bonds of Wm. J. Tickner & Sons for life to draw the interest monthly as long as she lives and at her death and leave no children the 20,000 worth of Bonds to go to the Surviving daughters Elizabeth and Dorothy Tickner.

"C.   To my Daughters: Elizabeth and Dorothy Tickner at the death of their Mother L. Katherine Tickner to get the 40,000 worth of bonds of Wm. J. Tickner & Sons Inc. to be divided in half and each to receive the interest as long as they live and when they die and leave no children there share to the surviving daughters and the last of the surviving daughters she to do as she pleases with it.

"D.   In reference to the Maryland Casket Co. of which I hold ¼ and the money I have invested there my wife to receive the interest and ¼ of the profit as long as she lives then to go to the three daughters and they to receive the interest money and the profits to be divided as long as they live and at the death of either one and leave no children her share to be divided to the two surviving one and so on until the last one and she to do as she pleases."

It will be observed that by the first part of paragraph third, Mrs. Tickner if she survived the testator, was given 655 shares of stock in the Tickner corporation during the term of her natural life.   Specific provisions were made for her holding and voting the stock, and selling and exchanging it, but the powers of sale and exchange were carefully limited to purposes of investment and were not to be construed as authorizing her as life tenant, to consume the corpus.   After his wife's death, Mr. Tickner provided that the stock or the reinvestment thereof should become part of the residue of his estate.

Before we consider the last part of paragraph "A", which admittedly contains the residuary clause, it may be noted that each of the daughters is to get $20,000 of the bonds of the Tickner corporation.   $40,000 of these bonds are first given to Mrs. Tickner for her life by paragraph "A".   After her death, each of her daughters, Elizabeth and Dorothy, is to get the interest on one half or $20,000, and by paragraph "C" disposition is made of the share of one dying without children.   The share of such a one is to go "to the "surviving daughters". Whether this includes Anna is not before us for decision.

Anna, by paragraph "B" gets the interest on $20,000 of the bonds of the Tickner Corporation for her life, but at her death, if without children, this $20,000 goes to the other two daughters.

After the conclusion of the statement about these bonds in paragraph "A", comes the residuary clause. The question before us is whether the statement at the end of the paragraph directing that at the death of his wife something is to go to the three daughters, includes all the rest of the testator's property, or only the Maryland Metal Casket Company stock. The Chancellor decided that these last words refer only to the Maryland Metal Casket Company stock.

Apparently the words which convinced the Chancellor that this was the proper construction were "she to do as she pleases". These words also occur in paragraph "C", which is concerned with the $40,000 worth of the Tickner corporation bonds, which first go to the widow and then to her two children. At the end of that paragraph is the statement, already mentioned, that these bonds are to go to the last of the surviving daughters, "she to do as she pleases with it". The same words are found in paragraph "D", relating to the Maryland Metal Casket Company stock, which is to go to the widow and after her death to the daughters with some provision about the survivor, which we do not now have to construe. This paragraph ends "and so on until the last one and she to do as she pleases". These words as used in paragraphs "C" and "D" clearly refer to the ultimate owner of the bequests mentioned in these paragraphs. The Chancellor concluded that the use of the same words in paragraph "A" meant the same thing, and that it was the intention of the testator to give the residue of his estate to his wife absolutely in the same manner and to the same extent as the bequests in paragraphs "C" and "D" were finally disposed of.

The words "do as she pleases" are not words ordinarily used in a well-drawn will, and have no special legal significance. They may mean one thing in one part of a will

and another thing in another part of the will, depending on the context. In paragraph "A" it is not possible that they are intended to permit the widow to have the unrestricted use during her life time of the Tickner corporation stock specifically mentioned in the third paragraph. She is very strictly limited during her life estate in this stock, is not authorized to dispose of it except for purposes of reinvestment, and is carefully prohibited from consuming as life tenant the corpus of that stock or its reinvestment. This corpus, after her death, is to become part of the residue of the testator's estate. If the testator meant that after the death of his wife, this stock in which her life estate was so carefully circumscribed was given to her absolutely to dispose of by her will, he took a peculiar and round-about way of accomplishing that result. It would have been simpler and easier and a more natural way of making the bequest of the stock to give it absolutely to his wife without any further restrictions. It is possible to give a person a life estate and also a remainder in the same property, but this is very unusual, and is not an idea that would occur to a layman unlearned in the law. To extend the life estate left to Mrs. Tickner in the Tickner corporation stock into an absolute estate by such a construction of the words used in paragraph "A", we must imply much more than these words would normally indicate.

The Maryland cases holding that the same person may hold both a life tenant and a remainderman are all cases where the life tenant is one of a class of remaindermen, and to take that life tenant out of that class would do violence to the will. Thus in *Robinson v. Mitchell*, 99 Md. 50, 57 A. 625, the court said it was unusual but by no means unheard of for a testator to devise a life estate and leave the remainder to a class that would include the life tenant. In so deciding the court quoted from *24 American and English Encyclopedia of Law*, 2d Ed. 394, to the effect that the earlier cases held that a devise for life to the *sole heir* of the testator and after his death to the testator's heirs was sufficient to exclude

the devisee of the life estate from taking a remainder. The Court then quotes from the same author a statement that the later cases consider the correct rule to be that where a testator gives property to a tenant for life and then to the testator's next of kin, and there is nothing in the context to exclude the natural meaning of the testator's words, the next of kin will take, and if the tenant for life is such next of kin either solely or jointly with other persons he will not on that account be excluded. In the *Robinson v. Mitchell* case a devise was made to a son for life and after his death to be equally divided among the six children. The Court held that the life tenant as a member of the class of the children also took in remainder. A similar ruling was made in *Perin v. Perin*, 139 Md. 281, 115 A. 51, where a testator gave his property to his widow for life and after her death or remarriage to be divided equally between his surviving children and his widow. The Court held that the remainder to the widow was intended to take effect after her death as well as after her remarriage, if any. In the latest case of *Nicodemus National Bank v. Snyder*, 178 Md. 140, 12 A. 2d 518, a testatrix left a house and lot to a daughter for her unmarried life and upon her death or marriage the executor of the testatrix was directed to sell the house and lot and distribute the proceeds among her six children or if dead, their descendants. The daughter who had the life estate, was one of the six children, and the Court held that the will indicated an intention to have the life tenant share in the disposition of the proceeds of the estate. We have, therefore, in this State, no case where a life tenant is also given as sole devisee or legatee, the same property held as life tenant.

There is a reason to be observed in giving a life estate to A and then a remainder in the same property to a class of which A is one. The reason is to preserve the property for the ultimate use of the class in remainder, while giving A the benefit of it during his or her life. But giving a life estate to the testator's wife and then giving her the sole remainder in the same property does not

preserve it or keep it intact. Nor does the testator have any interest in keeping it intact after the life estate because he does not know who will have its ultimate use. That will be determined by the will of his wife—her relatives, perhaps, or even her second husband, if she has one. So, while there may be a common sense basis for a good draftsman to make a life tenant also one of a class of remaindermen, there is no such basis for making such life tenant the *sole* remainderman. It may be done, and if that is clearly the intent of the testator it must be followed. But courts should be slow to give such a unique and fantastic interpretation of a will. And this is particularly true in a case such as the one before us. Here we have an ignorant testator (so far as legal terms are concerned) using words that indicate no clear intention, and we should not construe them to produce a result by indirection which the ordinary testator, whether with or without legal advice, would more naturally and simply accomplish by leaving his property to his wife.

After the exception in paragraph "A" of the Maryland Metal Casket Company stock, on which she is authorized to draw the interest on the money invested and the profit of testator's share, there is a dash before the words "and at her death to go to the three daughters, Anna I Elizabeth and Dorothy Tickner." If this last clause refers only to the Casket Company stock, not only would the dash seem out of place, but it gives this stock to the three daughters as tenants in common. There is, however, a special clause "D" taking care of this Casket Company stock, by which only a life estate is given to each of the daughters, with a provision that the share of any daughter dying and leaving no children is to go to the two surviving "and so on until the last one", so that, according to the Chancellor's construction, there is a conflict between this clause "D" and clause "A" as to the ultimate disposition of this Casket Company stock.

We cannot, of course, rewrite the testator's will for him. We cannot guess how he would have reworded his will had he known what were the difficulties which would

arise from the way he wrote it. We can consider his situation at the time he made his will as an aid to construction, but he had, of course, a right to give his widow the greater part of his property to dispose of as she wished. The fact that one construction would accomplish this, while another would divide it more equally among his children, after his death, does not raise any presumption against such a construction. It appears from the will, however, that he did have a general intention of treating his three daughters alike as will be seen by the division of the Tickner corporation bonds. $20,000 went to Anna, and $20,000 to each of the other daughters after the death of their mother. In each paragraph relating to these bonds he indicated, although in different words, some general idea that the shares of any daughter leaving no children should go to the other daughters. The same thing is true of the Casket Company stock, appraised as of no value, and some notes of the Casket Company amounting to $6100. This stock and these notes were not as valuable as other parts of his estate. It would seem to have been an unusual precaution for him to dispose of this property of little comparative value both in paragraph "A" and in paragraph "D". A more reasonable interpretation would seem to be that the mention of it in paragraph "A" was merely an interpolated exception, from the word "except" to the dash, in order to take it out of the general residue.

The net estate of the testator according to the two accounts of his executrix consisted of some $31,500 in addition to the stocks and bonds specifically bequeathed. This $31,500 is the undesignated property included in the residue disposed of in paragraph "A". Under the interpretation just suggested this $31,500 worth of property, in addition to the 655 shares of the stock in the Tickner corporation, valued at $39,500, would go to the three daughters equally. We think this is the more reasonable construction of the will before us. If the testator had intended his wife to have the greater part of his estate not only for her life, but absolutely, we do not think he would first have given her a life estate with

many restrictions, and then afterwards have given her the remainder without restrictions. He would have given it to her undivided and unrestricted. Since he did not frame his bequest in this way, and since his intention to accomplish such a result is not clear, we are unwilling to assume that he intended to leave one daughter with practically only a life interest in $20,000 and one-third of $6100 and to permit his wife to give the rest of his estate to anyone she cared to. Whatever he may have meant by the words "she to do as she pleases" in paragraph "A", we do not think he meant this. It is entirely possible that the words were intended to give his widow greater latitude in her use of her life estate in the undesignated property than she had in the stock in the Tickner corporation. However they may be construed, we think, upon a consideration of the whole will, that the testator intended to give his wife the bulk of his estate during her life to restrict her from diminishing what was in the Tickner corporation stock, and then to give that stock and the undesignated residue, after her death, to his three daughters, and we, accordingly, so hold.

The decree will be reversed and the case remanded for the passage of a decree in accordance with this opinion.

*Decree reversed with costs to the appellant.*

COLLINS and MARKELL, JJ., filed the following dissenting opinion:

As might be surmised at the argument and from the opinion of the court, the decision may be not displeasing to any of the friendly litigants. A large saving in federal taxes will result. We concur in Judge Tucker's opinion regarding the testator's intention as expressed in his will. It would seem clear that either to a lawyer or an undertaker gifts "to do as she pleases" are absolute gifts. What the testator might have said if the precise question now presented had been called to his attention is speculation; it has no place in the construction of his will.