McELROY ET AL. *v*. MERCANTILE-SAFE DEPOSIT
AND TRUST COMPANY, TRUSTEE
(Six Appeals in One Record)

[No. 227, September Term, 1961.]

*Decided July 9, 1962.*

The cause originally was argued before HAMMOND, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ., and reargued before BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ., and NILES, J., Chief Judge of the Supreme Bench of Baltimore City, specially assigned.

*Roger A. Clapp* and *Frederick J. Singley, Jr.* (on both arguments), with whom were *Jon F. Oster, Hershey, Donaldson, Williams & Stanley* and *Hinkley & Singley* on the brief, for Helen B. McElroy, Mary B. Guyton and the First National Bank and Trust Company in Waynesboro, both as Executor and Trustee under the Will of Silas G. Benedict, deceased, and as Administrator d. b. n. c. t. a. of the Estate of Lillian Clark Benedict, deceased.

*G. Van Velsor Wolf* (on both arguments), with whom were *Piper & Marbury* on the brief, for Harriet B. Clark and Dorothy White, Administratrix c. t. a. of the Estate of Herbert Ball Clark.

*Edmund P. Dandridge, Jr.* (on both arguments), with whom were *Venable, Baetjer & Howard* on the brief, for the Johns Hopkins University.

*Daniel B. Leonard* (on the reargument) for the Associated Professors of Loyola College in the City of Baltimore.

*Robert C. Murphy, Assistant Attorney General* (on the reargument), with whom was *Thomas B. Finan, Attorney General,* on the brief, for the University of Maryland School of Law.

Submitted on brief at both arguments by *William B. Somerville, George Edward Thomsen* and *Smith, Somerville & Case* for the Trustee.

NILES, J., by special assignment, delivered the opinion of the Court.

The present case involves the construction of the will of the late Walter L. Clark, an eminent lawyer of Baltimore City, who was for many years a member of the Faculty of the University of Maryland School of Law. Two questions are raised with regard to the part of the residue which was devised under clause Fifth (b) II to the testator's brother, Herbert Ball Clark, for the benefit of that brother and his family. These questions, the answers to which are interdependent, are as follows:

(1) Was there a partial intestacy as to two-thirds of the part of the residue allocated to the brother?

(2) What portion of the income from such part is the widow of the brother entitled to receive for her life?

The case was heard by Judge Allen in the Circuit Court of Baltimore City. He found that: (1) there was no intestacy, and (2) the widow, Mrs. Harriet B. Clark, is entitled to all of the income accruing under the clause mentioned. From this decision appeals and cross-appeals have been taken. The majority of this Court, after reargument, is of the opinion that the decision of Judge Allen was correct.

The case has been argued with ability and persuasiveness by counsel for all parties, and this Court is grateful to coun-

sel for their full and careful presentation of the issues and of the authorities.

Mr. Clark died unmarried in Baltimore on July 3, 1941, leaving as his only surviving next-of-kin and heirs-at-law his brother, Herbert Ball Clark, and his sister, Lillian Clark Benedict. Lillian Clark Benedict died January 14, 1956, survived by two adopted daughters, nieces of the testator, Helen B. McElroy and Mary B. Guyton, and by her husband, Silas G. Benedict, who died March 20, 1957. Herbert Ball Clark, the brother, died October 7, 1959, without ever having had any children. He was survived by his widow, Mrs. Harriet B. Clark, a party to these proceedings.

The will of Walter L. Clark is a short document. In four separate items, Mr. Clark made specific bequests of his property. By the Fifth item of his will, in the conventional language of a residuary clause, he disposed of all the rest and residue, as follows:

(a) One-quarter unto his friend, Agnes G. Kirby, absolutely if she should survive him;

(b) Three-quarters, or the whole, if Agnes G. Kirby predeceased him, to the Safe Deposit and Trust Company, as Trustee, to be divided into three equal "parts" to be held for the following purposes:

I. As to the first part, for his sister, Lillian, for life; and upon her death to her husband. Upon the death of the husband, to their adopted children, the testator's nieces, until they should both attain the age of 35 years, when the trust "as to this part shall cease", and the corpus should be divided between such children or their issue. Upon failure of either child to attain 35 or upon failure of issue, the share of such child "shall be distributed under the item Sixth of this will."

II. Paragraph II is the portion of the will requiring judicial consideration in these proceedings.[1] It provides that,

---

1. The full text of paragraph Fifth (b) II is as follows:

"As to one part thereof to pay the net income in quarterly instalments unto my brother Herbert Ball Clark, during the term of his life. Upon his death to pay said income in similar instalments unto his widow and any of his children who may survive

as to the second part, the trustee is to pay the income to his brother Herbert, for life, and upon Herbert's death

"to pay said income * * * unto his widow and any of his children who may survive him in the proportion of one-third to the widow and the balance to his surviving children until said children shall have attained the age of twenty-one years, * * *."

At such time the trust as to such child or children is to cease, and the proportionate part of the corpus of this part is to be paid to such child if living, or to his issue. Upon distribution to the child last attaining the age of 21, the income on one-third of this part is to be paid to the widow for life, and upon her death "that part of the corpus shall be distributed under Item Sixth hereof."

III. As to the third part, to pay the income unto Anna E. B. Clark, for life; upon her death to pay such income to Agnes G. Kirby for life; and upon the death of the survivor "the corpus of said part shall be distributed under Item Sixth hereof."

Item Sixth, which expresses the interest of the testator in legal education, provides:

"SIXTH: As and when certain of the trust estates set forth herein shall cease and the corpus thereof be available for distribution under this item Sixth of my will, I direct my Trustee to divide same into three

---

him in the proportion of one-third to the widow and the balance to his surviving children until said children shall have attained the age of twenty-one years, at which time the trust as to such child or children shall cease and the proportionate part of the corpus of this part shall be paid to said child or children. Should any such child of his die before reaching the age of twenty-one years leaving issue him or her surviving, then such child or children shall take the share per stirpes the parent would have taken if living, and at the time the parent would have taken it. Upon distribution to the child last attaining the age of twenty-one years the income on one-third of this part shall be paid to my brother's widow during her lifetime; then upon her death that part of the corpus shall be distributed under item Sixth hereof."

equal parts and to pay one part thereof unto each of the following institutions for their proper uses and purposes:

> Johns Hopkins University,
> Associated Professors of Loyola College (Evergreen),
> University of Maryland School of Law.

> "It is my intention and desire to have said funds used by the first two institutions (so far as it is legally possible to do so) for the purpose of furnishing free pre-legal education to deserving students unable to pay for the same and to be used by the Law School for the purpose of furnishing free legal education to students similarly situated. * * *."

The problem as to whether there is an intestacy, is raised primarily by the directions (a) to pay the income of Herbert's "part": "unto his widow and any of his children who may survive him," (b) that as each child shall attain the age of 21 the trust as to such child shall cease and "the proportionate part of this part" of the corpus shall be paid to said child or children, (c) that after the last child shall have attained 21, the income of one-third of this part shall be paid to the widow for life and (d) upon her death that part of the corpus shall be distributed under Item Sixth.

Since Herbert Clark had no children, there were not and cannot be any children who may survive him or attain the age of 21 years. It is the contention of the nieces that there is thus an intestacy as to two-thirds of the corpus of Herbert's part now, and that they are now entitled thereto. The widow contends that the basic bequest to the widow and any of Herbert's children means that as a result of the death of Herbert without children, she should take a life estate in the income of the whole "part." The three Institutions agree with the widow that there is no intestacy, but contend that the trust for the children as to two-thirds of Herbert's part has "ceased", and that, as one of the "certain of the trust estates set forth herein" which has ceased, it should now be distributed to them under Item Sixth.

We approach the solution of the problem bearing in mind a number of well-settled rules of construction, all of which have been urged upon us both in the briefs and the arguments of counsel. We are also mindful of the warning last given by Judge Adkins in *Payne v. Payne,* 136 Md. 551, 554, that there is no class of cases where decisions are of so little aid in reaching a correct conclusion as that involving the construction of wills.

It is not necessary to set forth the accepted rules in detail, for it is admitted by all parties that they are all valid expressions of the law. They are fully and authoritatively discussed in Miller's *Construction of Wills,* and for the purposes of this case they may be summarized as follows:

(1) The cardinal principle is to carry out the intention of the testator, as deduced from the "four corners" of the will. *Ball v. Townsend,* 145 Md. 589; Miller, *Construction of Wills,* (1927) sec. 9.

(2) The general intent of the testator prevails over minor discrepancies, omissions or contradictions. *Payne v. Payne, supra,* 136 Md. at 554.

(3) One of the strongest presumptions of the law is that where a will contains a residuary clause, every intendment shall be made against there either being a general or a partial intestacy. *Holmes v. Mackenzie,* 118 Md. 210, 215; *Ball v. Townsend, supra,* 145 Md. at 600; *Lavender v. Rosenheim,* 110 Md. 150, 153.

(4) Where a meaning is doubtful or alternative constructions are possible, the will should be construed to effect the general intent of the testator. *Berry v. Berry,* 1 H. & J. 417, 421; *Slingluff v. Johns,* 87 Md. 273, 277; Miller, *op. cit. supra,* secs. 13, 17.

(5) The Court in construing a will may change, transpose or add to the words of the will in order to effect the general intent of the testator. *Payne v. Payne, supra,* 136 Md. at 557.

(6) Where the residuary clause itself does not make a complete disposition of the residuum, the presumption against intestacy is not applicable, and if the words of the will clearly create an intestacy, the Court will not fill the void. *Barnum*

*v. Barnum,* 42 Md. 251, 311; *Henderson v. Henderson,* 131 Md. 308, 313.

(7) The Court will not write a new will for the testator, but will construe the words used by him, and will not change such words unless it clearly appears what specific words should have been used to express the overriding general intent. *McCurdy v. Safe Deposit & Trust Co.,* 190 Md. 67, 76; *Ridgely v. Pfingstag,* 188 Md. 209, 228.

(8) Words will not be changed unless it is clear what other words were intended to have been used. *Slingluff v. Johns, supra,* 87 Md. at 279; *Heald v. Heald,* 56 Md. 300, 313.

(9) It is a very extraordinary will where a residuary clause does not prevent a partial intestacy, unless some part of the residue itself be not well given. Miller, *op. cit. supra,* sec. 158; *Barnum v. Barnum, supra,* 42 Md. at 311; *Holmes v. Mackenzie, supra,* 118 Md. at 216.

(10) No particular form of expression is required to constitute a residuary clause, it being sufficient if the intent to dispose of the residue appears. Miller, *op. cit. supra,* sec. 58.

(11) Where a word is used more than once, it is presumed to be used always in the same sense unless a contrary intention appears by the context. *James v. Rowland,* 52 Md. 462, 467; Miller, *op. cit. supra,* sec. 25.

The vital question is whether under the provisions of Item Fifth (b) II the widow takes a life estate in all of the income of the "part" bequeathed for Herbert's benefit, or in only one-third thereof. If the widow takes only one-third of the income, then the question of intestacy arises as to the other two-thirds, i.e., whether a trust has "ceased" and whether there is an intestacy as to two-thirds of the corpus. If, however, his widow takes all of the income from Herbert's part, there will be no intestacy. In such a case the trust will continue throughout her lifetime; upon her death it will cease; and at that moment the whole corpus of the part will be available to be paid to the three Institutions.

We agree with the trial judge's finding of the general intent and scheme of the testator. In the will he specifically named or identified the persons who were to receive his bounty,

and limited what they were to receive, and when. Having provided for these individuals, and particularly his brother and sister and their children, both adopted and prospective, it is evident from the "four corners" of the will that the Institutions were to receive what was left. The trial judge further found that it was hardly debatable that education at the University of Maryland School of Law was a subject very close to the testator's heart, and that he intended the three Institutions to benefit for the purposes he indicated, after his family had been provided for in the manner specifically set forth in the will.

In order to conform to this general intent, Judge Allen construed the words relating to the income of the brother's "part": "unto his widow and any of his children who may survive him" as meaning: "to his widow; and if any of his children survive him, etc." The change in expression consists in the insertion of a semicolon after the word "widow", and the change of the words "and any of his children who may survive him" to the words "and if any of his children survive him."

We also find that to effectuate the testator's intent, the word "certain" in Item Sixth in the gift to the Insitutions should be construed as meaning "any", and the clause "under this item Sixth" should be read as meaning "As and when any of the trust estates set forth herein shall cease and the corpus thereof be available for distribution under this Item Sixth of my Will, I direct my trustee to divide the same into three equal parts etc." (for the Institutions).

It seems clear to us also that Items Fifth and Sixth of the will should be construed together to constitute a residuary clause for the whole will, and that the purpose of Item Sixth was to make a final and complete distribution, so expressed in dispositive terms, of all of the remainder of his estate.

Without changing a word of the will, we read the words of Fifth (b) II providing income for life "to his widow and any of his children who may survive him", as meaning "to his widow; and if any of his children survive him". If therefore no children survived, the widow is entitled to the whole of

the income. Only in case there were surviving children would the provision as to one-third to the widow and two-thirds to the surviving children come into play.

The words of the testator as written, while susceptible of the interpretations urged upon us by the heirs-at-law, the Institutions and others, are nevertheless susceptible, as they are written, of the meanings which we place upon them. We simply follow the accepted Rule as set forth in *Chism v. Reese,* 190 Md. 311, 319, that where there are two possible constructions, either of which can be adopted without straining the language of a will, the Court will adopt that construction which disposes of the entire estate rather than one which results in a total or partial intestacy.

Much stress is laid upon the use of the word "certain" in Item Sixth of the will in referring to the gift to the three Institutions when "certain of the trust estates * * * shall cease". It is contended on behalf of the nieces that the word "certain" means "fixed, stated or determined", and thus refers only to the trusts whose beneficiaries are fixed and determined by being expressly named or described. But "fixed and determined" is only one of the meanings of the word "certain." In Webster's New International Dictionary, Second Edition, unabridged, a second meaning is given as "One or some among possible others." In legal language the word "certain" is obviously frequently used in an indefinite sense. The Oxford English Dictionary gives as an example: " 'Whereas certain persons unknown did, on the night of * * *, feloniously enter', etc." The Century Dictionary gives as one of the definitions of the word "certain" the following: "Indefinite in the sense of not being specifically named." We have no difficulty in agreeing with the trial court that the word "certain" in Item Sixth should be construed as meaning "any", so that the instruction to divide the corpus for the three Institutions should be read as directing such division "when *any* of the trust estates * * * shall cease."

Our interpretation of the language used in all the clauses involved is supported by several general considerations. It is consistent with the general intent to benefit members of his family primarily and the three Institutions secondarily. There

is a clear expression of intent to allocate one-third of the residuary estate to his brother, Herbert, the brother's widow, and the brother's children, if any. There is a further expression of intent to benefit the three Institutions after family claims have been satisfied. There is a residuary clause purporting to dispose of all the residue. The words of the will are capable of our interpretation without change or transposition. Conversely, there is no expression of intent to benefit the family of the sister if the gifts to the family of the brother should fail. There is no clear showing, or even an apparent indication, of an intention not to dispose of that part of the estate of which it is claimed that there is an intestacy, or to benefit the nieces beyond sharing in the part allocated to the testator's sister. No "unbending rule of law" is contravened by our construction. *Payne v. Payne, supra,* 136 Md. at 555. No words limit the provision by restricting the devolution to the Institutions based upon the reason for the cessation of the trusts; the gift of the remainder becomes effective when the trusts cease for any reason. The reason in the present case is the death of the widow when no issue of the brother survives.

The words of the will as written are capable of the construction which we place upon them, and only by such construction can they be in harmony with the general plan and intent which we find from the "four corners" of the will as a whole. Thus construing Items Fifth and Sixth of the will, we hold: (1) that Items Fifth and Sixth must be construed together as constituting a residuary clause; (2) that the trust of income for the brother's widow for life is a trust of all of the income from the "part" set aside by paragraph Fifth (b) II; (3) that the trust for the widow has not ceased, and will not cease until her death; (4) that the trust for the widow is one of the "certain" trusts described and intended to be affected by the provisions of Item Sixth; and (5) that upon the death of the widow that trust will cease and the entire corpus of the "part" disposed of by Item Fifth (b) II will be payable to the three Institutions.

*Decree affirmed, with costs to be paid from the estate.*

PRESCOTT, J., filed the following dissenting opinion, in which MARBURY, J., concurred.

All members of this Court are in entire accord upon two aspects of the case, namely, that Walter L. Clark, whose last will and testament unfortunately requires judicial construction due to alleged ambiguities contained therein, was a dearly beloved and highly esteemed member of the bar of this state; and the matter for determination was ably presented to this Court by counsel representing all parties.

The majority opinion sets forth eleven rules or canons relating to the construction of wills. They are all well recognized and have been long established. There is no difficulty in stating the rules of construction; the difficulty arises in determining which one or ones should be applied in any particular case. I think that rules (1), (6), (7), (8) and (9) as stated in the majority opinion should control our decision here, rather than the Court's rewriting Mr. Clark's will upon the assumption that it has conclusively discovered the testator's overall intention and that words should be changed and constructions given to certain parts of the will, so as to accomplish this assumed intention.

There can be no doubt that the cardinal rule of construction in interpreting wills is that the testator's intention should prevail; but this intention, when the wording of the will is clear and unambiguous, must be discerned from the will itself as evinced by the language of the testator. Judge Markell, in *Ridgely v. Pfingstag,* 188 Md. 209, 228, 50 A. 2d 578, stated: "When the words of a will are of doubtful meaning, or *necessarily* imply a gift which they do not in terms express, the courts lean toward a construction which avoids an intestacy. When the meaning of the words is clear, and contains no such *necessary* implication, the courts can not make a new will for the testator to supply an omission and avoid an intestacy." (Italics mine.) And Chief Judge Marbury, for the Court in *McCurdy v. Safe Deposit & Trust Co.,* 190 Md. 67, 76, 57 A. 2d 302, stated the principle in this manner: "We cannot, of course, rewrite the testator's will for him. We cannot guess how he would have reworded his will had he known what

were the difficulties which would arise from the way he wrote it." See also *Smith v. Baltimore Trust Co.,* 133 Md. 404, 105 A. 534, *Perkins v. Iglehart,* 183 Md. 520, 39 A. 2d 672; *Cameron v. Frazer,* 187 Md. 368, 50 A. 2d 243; *Abell v. Abell,* 75 Md. 44, 63, 23 A. 71.

I do not find paragraph Fifth (b) II, set forth in full in footnote 1 of the majority opinion, ambiguous. Mr. Clark was an outstandingly able lawyer. In plain language, he simply set aside an aliquot part of his residuary estate and directed that the income derived therefrom should go to his brother for life; and upon the brother's death the income from the part should be paid "unto his widow and any of his children who may survive him in the *proportion of one-third to the widow* (emphasis added) and the balance to his surviving children," until the children attained twenty-one years of age, at which time the trust as to the children should cease, and any child's proportionate part of the corpus paid to the child. If any such child died before reaching twenty-one years of age, leaving issue, the issue would take the parent's share per stirpes. It was at this point that Mr. Clark probably should have stated where the children's two-thirds portion of this part was to go, if his brother died without issue. However, this does not create an ambiguity in the language he used; it simply means (in my opinion) he stopped, probably through oversight, his alternative dispositive provisions too soon, if he were to avoid an intestacy as to the childrens' portions, in the event his brother died without issue. Mr. Clark then concluded this paragraph of his will by providing that upon distribution to the child last attaining twenty-one years of age, "the income on *one-third of this part* (emphasis added—it will be noted the majority awards the brother's wife the entire income for life) shall be paid to my brother's widow during her lifetime; then upon her death that part of the corpus shall be distributed under item Sixth hereof." Unless an ambiguity in the language used by Mr. Clark can be shown (and I repeat the mere failure to include complete alternative provisions so as to dispose finally of all portions of the property involved in this paragraph does not create an ambiguity) the above

mentioned principles should be applied, and the Court should not resort to conjecture as to what Mr. Clark may or may not have done with the children's two-thirds portion of this part.

Judge Allen found below that in order to carry out the assumed intention of the testator it was necessary to insert a semi-colon after the word "widow," and to change the words "and any of his children who may survive him" to the words "and if any of his children survive him," and also to change or construe the word "certain" in item Sixth to mean "any." The majority opinion states: "Without changing a word of the will, we read the words of Fifth (b) II providing income for life 'to his widow and any of his children who may survive him [in the proportion of one-third to the widow and the balance to his surviving children * * *]' as meaning 'to his widow; and if any of his children survive him [1] [in the proportion of one-third to the widow and the balance to his surviving children * * *].'" I have diligently tried to follow this construction evolved by the majority, but frankly every time I do so, I find myself "stuttering" mentally. It would serve no useful purpose to analyze further this specific holding. It obviously changes completely the ordinary and usual meaning of the terms used by Mr. Clark, and does so "without changing a word of the will."

Much was said, and rightfully so, of the strong presumption against partial intestacy when a will contains a residuary clause. It is doubtful that any man, who ever decided to make a will, intended a partial intestacy (unless the will specifically so provided), yet the cases are legion where such situations have developed. Rule of construction (9) mentioned by the majority states: "It is a very extraordinary will where a residuary clause does not prevent a partial intestacy, *unless some part of the residue itself be not well given. * * * * (Emphasis added.) This is, of course, true; but it must be remembered that the portions of the brother's widow and children were part and parcel of the residuary clause of Mr. Clark's

---

1. Exactly the same result reached by Judge Allen, but without "changing a word in the will."

will. Partial intestacies were found in the following cases, where the wills contained residuary clauses, but the testator failed to dispose of a portion of the residue. *Smith v. Baltimore Trust Co., supra, Henderson v. Henderson,* 131 Md. 308, 101 A. 691; *Church Extension v. Smith,* 56 Md. 362; *Abell v. Abell, supra; Geo. Washington Univ. v. Riggs Nat'l Bk.,* 88 F. 2d 771 (D.C. App.). See also 2 *Redfield, Wills,* (3rd Am. ed.), 119, and 2 *Jarman, Wills* (5th Am. ed.), 368, wherein it is stated: "When the disposition of an aliquot part of the residue itself fails from any cause, that part will not go in augmentation of the remaining parts, as a residue of residue, but will devolve as undisposed of."

I think that the brother's wife was clearly left the income on one-third of the part of the residuary estate disposed of in item Fifth (b) II for her life—not the entire income from this part for life; and with reference to the remaining two-thirds, Mr. Clark attempted to leave it to a person or persons (the brother's child or children), who are non-existent and can never exist, without making an alternative disposition of the remainder, which means an intestacy as to this two-thirds.

Judge Marbury has authorized me to say that he concurs in the views expressed above.